**JEFFERSON SAVINGS AND LOAN ASSOCIATION, et al., Appellants,**

v.

**Gerald H. GOLDBERG, Director of Revenue, State of Missouri, Respondent.**

No. 62712.

Supreme Court of Missouri,
En Banc.

Jan. 12, 1982.

Rehearing Denied Feb. 9, 1982.

Warren E. Slagle, Slagle & Bernard, Kansas City, P. Pierre Dominique, Jefferson City, for appellants.

John Ashcroft, Atty. Gen., Steven Akre, Asst. Atty. Gen., Jefferson City, for respondent.

SEILER, Judge.

This is a declaratory judgment action brought by more than ninety savings and loan associations[1] and four individual account or deposit holders for a declaration as to the constitutionality of the intangible

---

1. About 85% of all the associations in Missouri.

property tax assessed on holders of accounts in savings and loan associations. Section 148.480, RSMo 1978. The plaintiffs include both federally and state chartered associations and deposit and account type associations. The trial court found the tax constitutional. Plaintiffs appealed to this court, which has jurisdiction because the validity of a statute of this state and construction of a revenue law are involved. Mo.Const. art. V, § 3.

Mo.Const. art. X, § 4(b) provides as follows:

> Property in classes 1 [real property] and 2 [tangible personal property] and subclasses of class 2, shall be assessed for tax purposes *at its value or such percentage of its value as may be fixed by law for each class* and for each subclass of class 2. Property in class 3 [intangible personal property] and its subclasses shall be taxed only to the extent authorized and at the rate fixed by law for each class and subclass, and the tax *shall be based on the annual yield* and shall not exceed eight per cent thereof. (Emphasis added.)

As a preliminary observation, we note that class 1 and class 2 property may be assessed on a percentage of value as well as full value, but that a sharp distinction is drawn in this regard as to intangible personal property. The tax on intangible personal property is to be based *only* on the annual yield.

Sections 148.470–.530 provide for the taxation of accounts in savings and loan associations.[2] These statutes were first adopted in 1945. H.B. 869, 1945 Mo.Laws 1919. In 1969, after savings and loan associations were authorized to accept deposits, H.B. 293, 1969 Mo.Laws 509, the legislature amended §§ 148.480, .490, and .520 slightly to define earnings as including interest (from deposits) as well as dividends (from accounts). The prior statute, § 148.480 RSMo 1959, had referred only to "dividends".

Section 148.480 now reads:

> There is hereby imposed upon each person either natural or corporate, holding personally or in trust, an account in an association, an annual tax of two percent of the taxable portion of the earnings, including dividends and interest, paid or credited by such association to such account in the preceding year. *The "taxable portion" of such earnings shall be that proportion thereof which shall equal the proportion of the gross income of such association for the year derived from its intangible property, other than obligations of or guaranteed by the United States, to its entire gross income.*

(Emphasis added.)

Under this statute, as respondent concedes and as the statute states, the tax is imposed on the holders, natural or corporate, of accounts or deposits in savings and loan associations and is assessed on the taxable portion of the earnings credited to the accounts. The association, however, is required to compute, withhold, and pay to the director of revenue the amounts of all taxes imposed on its members and, at the association's option, may absorb and pay the tax without charging the same to the particular accounts of its holders. Section 148.500.1. From the record it appears that all savings and loan associations in Missouri have, since the statute was enacted, elected to absorb the tax rather than pass it on to the account holders.

Section 148.520 classifies accounts in savings and loan associations as intangible property, defines the earnings paid or credited to an account as the annual yield, and provides that the tax imposed by § 148.480 is, with certain exceptions, in lieu of all other taxes on associations.

Section 148.480, set out above, details the mechanics for computing the intangible property tax. It is assessed not on the *earnings* actually paid or credited to the account but only on the *taxable portion* of those earnings. The taxable portion is

---

**2.** Prior to the repeal, effective January 1, 1975, of the general intangible tax law, §§ 146.010 and 146.120, RSMo 1969, all owners of money on deposit and of interest bearing investments were subject to said property tax.

based on a percentage which is determined by reference to the sources of the association's income rather than to the holder's earnings. The two percent tax rate is then applied to the taxable portion. What is being taxed are the holders' accounts, but this tax is based on how each association earns its money.

Under the formula, the accounts will never be taxed on the basis of their annual yield. This is because the formula will inevitably produce a fraction or ratio which is less than 100%. As is shown by the exhibits in the record of some ninety associations, the gross income for the year from intangibles is always less than the entire gross income of the association. This is true because the associations have forms of income other than from intangibles which enter into the makeup of their entire gross income, such as loan fees, service fees, rentals, commissions, appraisal fees and penalties for early withdrawals. The result is, therefore, that in no instance will the tax base be the annual yield, which is defined in § 148.520 as the full amount of the earnings paid or credited to the amounts, but will instead be the product of a proper fraction applied to the annual yield.

In addition to the foregoing diminution of the tax base to less than the annual yield of the intangible property being taxed, the formula has another built in reducing effect. Depending upon whether an association has income from United States government obligations, two different formulas are used to determine the taxable portion of earnings.

Where the association does have income from United States government obligations, the formula is as follows:

$$\frac{\text{gross income from intangibles less income from U.S. government obligations}}{\text{entire gross income of the association}} \times \text{annual yield (earnings credited or paid to accounts)} = \text{taxable portion of earnings}$$

Where the association does not have income from United States government obligations the formula is different and is as follows:

$$\frac{\text{gross income of the association from intangibles}}{\text{entire gross income of the association}} \times \text{annual yield (earnings credited or paid to accounts)} = \text{taxable portion of earnings}$$

To illustrate the difference in the taxable portion produced by these two formulas let us take the following examples of two associations with the same amount of gross income but with one having income from United States government obligations and the other not:

| | |
|---|---|
| Gross income from intangibles including U.S. government obligations | $100,000 |
| Income from U.S. government obligations | $ 10,000 |
| Gross income from all sources | $180,000 |
| Annual yield (earnings credited or paid to accounts) | $ 50,000 |

Applying these figures to formula one above, the equation is as follows:

$$\frac{\$100,000 - \$10,000}{\$180,000} \quad X \quad \$50,000 \quad = \quad \$25,000 \text{ taxable portion of earnings,}$$

on which the two percent tax would be $500 and the effective tax rate would be one percent.

Using formula two above and assuming the association does not have any income from government obligations, the equation is as follows:

$$\frac{\$100,000}{\$180,000} \quad X \quad \$50,000 \quad = \quad \$27,777.78 \text{ taxable portion of earnings,}$$

on which the two percent tax would be $555.56 and the effective tax rate would be 1.1 percent.

Thus we see the results are different because the tax base is different. The association without government income pays $555.56, while another association with the same gross income from intangibles and the same gross income from all sources but which has some government income in its intangibles pays only $500. The tax is 11.1% higher in the second example than it is in the first. Additionally, in neither instance is the tax on the annual yield of the accounts.

■ As seen from art. X, § 4(b) quoted earlier, the tax on intangible property "shall be based on the annual yield". The noun "yield" in the sense used in the constitutional provision means, of course, the return upon an investment. The parties are in agreement that the annual yield from an account in a savings and loan association is the earnings paid or credited to the account during the year, as the statute declares, § 148.520. The statute under attack,

§ 148.480, *supra*, does not base the tax on the annual yield of the intangible property, but bases it instead only on the taxable portion thereof which by definition applies a fraction which will vary from association to association and excludes from the intangible property income of the association income or yield derived from obligations of the United States. This, to repeat, will always produce a tax base less than the annual yield. Counsel for respondent conceded at trial that the "legislature has chosen to exempt some portion of the earnings to the account" and the trial court found that the formula produces a taxable portion of earnings which varies from association to association. While the tax is two percent of whatever the taxable portion of earnings turns out to be, the record shows that the tax actually paid on accounts of the same size with the same yield varies widely from one association to another. This necessarily will be the case, because the fraction used in the formula to arrive at the taxable portion will vary, as no two associations will have the same amount of intangible income or entire gross income.

The director of revenue relies upon *General American Life Insurance Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458 (banc 1952) where an earlier statute [3] defined "yield" of intangible personal property as the aggregate proceeds received as a result of ownership less the amount of interest required to be credited by the owner thereof to "reserve liabilities" of the owner maintained under the Missouri statutes. Presumably the statute applied to insurance companies having legally required reserves. The court treated reserve liabilities as a deduction from gross assets in arriving at the actual and true value of the property for taxation and not as an exemption from taxation, which was the basis on which the director of revenue was attacking the statute. The director contended that to the extent that the insurance company was permitted to deduct the interest, the company was being exempted from the payment of the intangi-

ble personal property tax in contravention of Mo.Const. art. X, § 6 which prohibits all laws exempting property from taxation other than certain enumerated property, none of which was present in the General American Life Insurance Co. case.

In the case before us, however, the director argues that § 4(b) does not require that the intangible property tax be levied against 100% of the yield any more than the section requires that real or tangible personal property be taxed on 100% of its value. The director argues that all the constitution requires is that intangible property be taxed upon all, or some part of its yield. This argument is specious because, as pointed out at the outset, § 4(b) explicitly provides that classes 1 and 2 (real and tangible personal property) "shall be assessed for tax purposes at its value or *such percentage* of its value as may be fixed by law . . ." (emphasis added) but expressly provides, in contrast, that the intangible personal property tax is to be based on annual yield. It is plain the framers of the constitution intended to differentiate between the tax base permitted for real and tangible personal property and that permitted for intangible personal property. Had it been intended that intangible personal property could likewise be taxed on a percentage of its value or return, the constitution would have said so, as it did with class 1 and class 2 property.

The director also argues that if a tax which must be levied according to value or some percentage of value is, in the words of the court in *General American*, a tax levied "on the basis of value", then a tax which must be levied "based on the annual yield" may be levied according to yield or some percentage of yield.

That question was not before the court in *General American Life Insurance Co.* As said, the contention was being there made that by permitting the owner to deduct interest required to be credited to reserve

---

**3.** The statute was § 146.010(4), RSMo 1949. It was repealed by 1972 Mo.Laws 738, effective January 1, 1975, which was in turn repealed by 1973 Mo.Laws 224, and a new section enacted in lieu thereof, § 146.011, which was to terminate on December 31, 1974.

liabilities, the owner was being exempted from the payment of intangible personal property tax in contravention of the constitutional provisions limiting exemptions to certain prescribed categories. The court said that the provision did not constitute an exemption of the property from taxation. All it did was to provide for a deduction to reach the true and actual yield and not a fictitious yield.

In the present case, however, the statute has the opposite effect. By use of the taxable portion formula, all earnings attributable to income of the association from sources other than intangible personal property and from United States government obligations are excluded from taxation although part of the annual yield. Thus, a fictitious yield, not the actual yield, is produced which varies from association to association depending upon the sources of each association's income. The tax base is not even a uniform percentage of the annual yield (if that were constitutionally permissible), as would be the case where, for example, § 137.115, RSMo 1978 provides that as to real and tangible property the assessors "shall assess the property at thirty-three and one-third percent of its true value in money. . . ." Instead, the percentage tax base attempted by § 148.480, *supra,* differs from association to association and thus from taxpayer to taxpayer.

The second sentence of § 148.480 is hence void and unenforceable by being in violation of the provisions of Mo.Const. art. X, § 4(b).

The question remains whether the balance of the section, that is, the first sentence which imposes an annual tax of two percent of the taxable portion of the earnings paid or credited by the association to the account, can be saved by § 1.140, RSMo 1978, which provides that the provisions of every statute are severable and that those portions of the statute remaining after the unconstitutional portion is stricken are valid unless the court finds that "the valid provisions of the statute are so essentially and inseverably connected with, and so dependent upon, the void provision that

it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

The balance of § 148.480 cannot, however, in our opinion be saved. What is left is the first sentence and there it will be noted that the term "taxable portion" also appears. With the final sentence being held void, the first sentence then becomes incomplete in its meaning as it would then be referring to a tax of two percent on the "taxable portion" of earnings, without anything left in the section to define the term "taxable portion". "Portion" means a piece, a part, or a segment of something and so, without the aid of the second sentence defining what the piece or part is, the first sentence is not workable. It fails to state what the portion is which is to be taxable. It cannot be presumed that the legislature would have enacted the first sentence basing the tax on the taxable portion of earnings without at the same time having enacted the second sentence which defines what the "taxable portion" is. The court finds that the first sentence standing alone is incomplete and incapable of being executed in accordance with the legislative intent.

The tax purported to be imposed under § 148.480 cannot be imposed upon the holders of accounts in savings and loan associations on the earnings paid or credited by the associations to such accounts.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment in accordance with this opinion.

DONNELLY, C. J., and BARDGETT, J., concur.

WELLIVER, J., concurs in separate concurring opinion filed.

MORGAN, J., dissents in separate dissenting opinion filed.

RENDLEN and HIGGINS, JJ., dissent and concur in separate dissenting opinion of MORGAN, J.

WELLIVER, Judge, concurring.

I concur in the principal opinion. I believe that additional explanation is required as to why a statute which has been on the books for some thirty-six years is now declared by the Court to be unconstitutional. The answer lies in "changing times" and "escalating interest rates". During the many years that savings and loan associations performed only their primary function of making building loans, and for so long as government guaranteed obligations were much less attractive than regular installment loans, the government securities held by savings and loans were few and the resulting differences in taxes paid by the various savings and loans were minimal. The recent rise in interest rates on government obligations to levels equal to or exceeding those which could be charged on installment loans plus the potential savings made possible by eliminating the business cost of processing installment loans has created the environment in which the inequities resulting from the application of the statute became acutely identifiable. Identification of the inequity precipitated the claim of unconstitutionality.

Along this same line, continuation of the present trend of federal and state legislation in the direction of eradicating the distinguishing features between banks, savings and loan associations, and credit unions, may well reach a point where the present classifications made for the purpose of taxation of financial institutions will become constitutionally suspect.[1] The only institution covered in Chapter 148, RSMo 1978, entitled, "Taxation of Financial Institutions", which is clearly distinguishable from the other institutions is insurance companies, perhaps for the reason that insurance companies are not in fact "financial institutions".

1. It is of some interest to note that H.B. 1242 (Truly Agreed and Finally Passed), 79th General Assembly, Second Regular Session, 1978, would have repealed all sections relating to the taxation of savings and loans and would have enacted in lieu thereof an eight percent (8%) tax on net revenue, a tax similar to the bank

MORGAN, Judge, dissenting.

Being convinced that the principal opinion reaches an erroneous result, I respectfully dissent because (1) it totally disregards long standing rules of statutory construction that a legislative enactment is presumed to be valid and where susceptible of a construction harmonious with the Constitution must be given that construction; (2) it creates a strained interpretation of Sec. 4(b) of Art. X of the Missouri Constitution by assuming and imposing thereon a definition of the term "annual yield" which is inconsistent with other provisions of said section; (3) it compounds said error by ingrafting the same erroneous definition to Sec. 148.480, RSMo 1978, which of necessity faults the proposed analysis of said section; (4) it creates by something more than implication a threat to any tax law which allows a taxpayer, individual or corporate, to make business decisions affecting the amount of tax due; (5) it fails to follow the dictates of Sec. 1.140, RSMo 1978, that "provisions of every statute shall be severable" (absent certain findings) if, for argument only, the exemption of income from "obligations of or guaranteed by the United States" are found objectionable and stricken instead of unnecessarily striking the entire last sentence of the statute as now proposed; (6) it erroneously interprets Sec. 148.520, which if read as printed clarifies the question; (7) and lastly, but perhaps most importantly, it moves the Court improperly into the legislative and executive arena as shown by the concurring opinion of Judge Welliver.

For convenience of reference, Sec. 4(b) of Art. X of the Constitution of 1945 is requoted as follows:

Property in classes 1 [real property] and 2 [tangible personal property] . . . shall be assessed for tax purposes at its value or such percentage of its value as may be fixed by law for each class . . . . Proper-

tax. However, the bill was vetoed by then Governor Teasdale stating: "This bill represents a piecemeal approach to a much broader problem of statewide dimensions—namely, equitable methods of taxation." St. Louis Post Dispatch, June 16, 1978.

ty in class 3 [intangible personal property] ... *shall be taxed only to the extent authorized* and at the rate fixed by law for each class ... and the tax shall be based on the annual yield and shall not exceed eight per cent thereof.

Since the question is one solely of construction, one must look first to the principal opinion's reading of the constitutional provision in Sec. 4(b) and the relevant statutes. Three excerpts therefrom readily identify the reason why an erroneous result was inevitable:

(a) ... class 1 and class 2 property may be assessed on a percentage of value as well as full value, but that a sharp distinction is drawn in this regard as to intangible personal property.

(b) It is plain the framers of the constitution intended to differentiate between the tax base permitted for real and tangible personal property and that permitted for intangible personal property. Had it been intended that intangible personal property could likewise be taxed on a percentage of its value or return, the constitution would have said so, as it did with class 1 and class 2 property.

(c) As seen from art. X, § 4(b) quoted earlier, the tax on intangible property 'shall be based on the annual yield'. The noun 'yield' in the sense used in the constitutional provision means, of course, the return upon an investment. The parties are in agreement that the annual yield from an account in a savings and loan association is the earnings paid or credited to the account during the year, as the statute declares, § 148.520.

Had the declaration in (c) been followed, a correct result had to follow. Conversely, allowing those in (a) and (b) to control, as did the principal opinion, forced an incorrect result.

Simply put, the principal opinion looked to Sec. 4(b) of the constitution and focused on "the tax shall be based on the *annual yield*" (emphasis added); and, after assuming it referred to the annual yield of the "association" instead of the annual yield of the "account holder," ignored the first portion of the same sentence that class 3 (intangible personal property) "shall be taxed only to the extent authorized...." Clearly, the last part quoted makes the assumptions in (a) and (b) extremely tenuous.

With the taxing power resting in the General Assembly, the meaning encompasses to the extent authorized "by the General Assembly"; and the annual yield is that realized by the account holder from the tax as authorized "by the General Assembly".

As shown in Sec. 148.480 the tax is imposed on the account holder to the extent that funds credited to his account fall under the taxable portion of said earnings. The extent to which funds credited are taxed may turn on "business judgment" decisions of the particular association which the particular account holder selected. The principal opinion would reject such a possibility, and I suggest such a result to be inconsistent with all known taxing statutes. Query, as to how the recent "All-Saver" and "IRA" statutes will survive with the effects thereof on tax liabilities being dependent on a personal "business" decision to participate or not.

If the exception of income derived from "obligations of or guaranteed by the United States" is unconstitutional (a thought which should be rejected) and causes the basic problem, it could be stricken under Sec. 1.140 and leave the remaining portion which easily can stand alone.

The constitution authorized the tax and it was assessed properly by the legislative department of this state and should be upheld.