COMMUNITY FEDERAL SAVINGS & LOAN ASSOCIATION, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

MUTUAL SAVINGS & LOAN ASSOCIATION, Appellant,

v.

DIRECTOR OF REVENUE, State of Missouri, Respondent.

School District of Kansas City, Missouri, Reorganized School District No. 7 of Jackson County, Missouri (Lee's Summit), and North Kansas City School District of Clay County, Missouri, Intervenors–Respondents.

Nos. 69678, 69718.

Supreme Court of Missouri, En Banc.

May 17, 1988.

Rehearing Denied June 14, 1988.

John Pletz, Alex Bartlett, Thomas A. Vetter, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Melodie A. Powell, Ass't. Atty. Gen., Jefferson City, for respondent.

Duane Benton, Jefferson City, for intervenors-respondents.

Warren E. Slagle, Kansas City, for amicus curiae.

HIGGINS, Judge.

The Administrative Hearing Commission affirmed decisions of the Director of Revenue that appellants are not entitled to refunds of intangible property taxes paid under section 148.480, RSMo 1978, subsequently held unconstitutional in *Jefferson Savings and Loan Association v. Goldberg*, 626 S.W.2d 640 (Mo. banc 1982). The principal question is whether appellants are precluded by sovereign immunity from recovery under the general refund statute, section 136.035, RSMo 1986.[1] A question peculiar to appellant Community Federal is whether its claim was properly dismissed for failure to file timely appeal from the Director's final decision as provided by section 161.273, RSMo 1978 (transferred now section 621.050, RSMo 1986). A final question, raised by intervenors, is whether such refunds would violate article X, section 21, Constitution of Missouri, which prohibits the state from reducing its proportion of the costs of free public schools. Intervenors also question the subject of the holding in *Jefferson Savings and Loan.* The dismissal against Community Federal is affirmed; the decision against all other appellants is reversed.

Appellant Community Federal acquired three savings institutions, appellants Citizens Savings Association, Plaza Savings Association, and Crystal City Savings &

---

1. Section 136.035, RSMo 1986, provides:
    Director to refund taxes, when—claim to be filed within two years of date of payment.—1. The director of revenue from funds appropriated shall refund any overpayment or erroneous payment of any tax which the state is authorized to collect. The general assembly shall appropriate and set aside funds sufficient for the use of the director of revenue to make refunds authorized by this section or by final judgment of court.
    2. The director of revenue shall refund any overpayment or erroneous payment of any tax on intangible personal property and the amount refunded shall be charged against the next apportionment to the political subdivision which was the residence or situs of the taxpayer at the time the tax was paid.
    3. No refund shall be made by the director of revenue unless a claim for refund has been filed with him within two years from the date of payment. Every claim must be in writing under oath and must state the specific grounds upon which the claim is founded.

Loan Association, by merger before the final decisions of the Director of Revenue, and two institutions, appellants Carondelet Savings & Loan Association and First Federal Savings & Loan Association of Moberly, after their appeals to the Administrative Hearing Commission. All these claims were consolidated in one appeal from the adverse decisions of the AHC and consolidated with the similar appeal of Mutual Savings & Loan Association.

Appellants are savings and loan associations of individual members engaged in the business of receiving, holding and investing members' money and making loans. Mutual Savings & Loan Association paid intangible taxes for 1975 through 1980 in total sum of $249,407.76. Community Federal Savings & Loan Association paid intangible taxes for 1975 through 1981 in a total sum of $7,256,373.00. Community Federal's five acquired institutions, Citizens, Plaza, Crystal City, Carondelet, and First Federal, paid intangible taxes in their own right during the period 1975 to 1981 in a total sum of $2,787,180.89. Appellants paid the taxes from their funds; none of their account holders paid any portion of the taxes, and appellants did not charge members' accounts for any of the taxes paid.

Respondent Director held appellants' intangible tax payments in an account until all but his two percent commission had been distributed to local governments pursuant to chapter 148, RSMo. Included in the distribution to each county was a schedule describing the amount each political subdivision in the county was to receive pursuant to section 148.500, RSMo 1978.

The amount of appellants' intangible tax payments was correctly computed. Appellants paid their taxes as required by the statutory scheme, without protest. During the periods at issue, some 53 other savings and loan associations did not pay their intangible taxes for one or more years. Respondent Director sent an assessment to the nonpaying savings and loan associations to pay the delinquent taxes. Some, if not all, of those associations filed appeals with the AHC. Subsequent to this Court's decision in *Jefferson Savings and Loan,*

and on motion of the Director, the AHC dismissed those cases on the ground that the Director had cancelled and abated the assessments.

## I.

Appellants contend the AHC erred in failing to reverse the denial of refunds by respondent Director because their claims are authorized by the general tax refund statute, section 136.035, RSMo 1986, and are not precluded by sovereign immunity.

The AHC found, and respondent Director and intervenors argue, that section 136.035, RSMo 1986, does not expressly provide that the sovereign can be sued. Specifically, the AHC found that the term "overpayment" in section 136.035.2 should not be construed to include payment of a tax declared unconstitutional. The AHC concluded the language in section 136.035.2, "the amount refunded shall be charged against the next apportionment ...," precluded appellants from receiving a refund because when a tax is declared unconstitutional, payment stops and there will not be a "next apportionment." The AHC also found that the general assembly did not contemplate a refund in the case where an intangible property tax is declared unconstitutional and construed the statute strictly against appellants' claims under *Gas Service Co. v. Morris,* 353 S.W.2d 645, 648 (Mo.1962).

■ The courts of this state have consistently held that the state may not be sued without its consent. *Kleban v. Morris,* 363 Mo. 7, 247 S.W.2d 832, 836 (1952). "The right of sovereign immunity from suit exists independent of express sanction, and it is the consent to be sued that is to be expressed in constitutional or statutory enactment or waived by voluntary appearance and submission to jurisdiction." *Id.* 247 S.W.2d at 837, 838. Here the action is for the recovery of money, held by the state treasury, and the state is entitled to invoke its sovereign immunity unless it expressly consents not to do so. *See also Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 691, 69 S.Ct. 1457, 1462 n. 11, 93 L.Ed. 1628 (1949); *American*

*Trucking Association, Inc. v. Conway*, 146 Vt. 579, 585, 508 A.2d 408, 414 (1986).

■ The majority rule is that statutes waiving the immunity of the sovereign from suit are strictly construed, *Kleban*, 247 S.W.2d at 837; *Gas Service Co.*, 353 S.W.2d at 649. Section 136.035.2 states the "director of revenue shall refund any overpayment or erroneous payment of any tax on intangible personal property ...," but does not pronounce specifically on the refund of taxes paid under a statute later held unconstitutional.

Public policy discourages suit for the refund of taxes erroneously paid or illegally collected. Governments are entitled to presume that statutes are constitutional. Government budgets are prepared on an annual cash basis. *Lavin v. Hackensack Board of Education*, 90 N.J. 145, 154, 447 A.2d 516 (N.J.1982), *cited in Continental Trailways, Inc. v. Director*, 102 N.J. 526, 509 A.2d 769, 781 (N.J.1986). Therefore in the absence of a statutory limitation on the time in which a taxpayer may file suit to declare a tax unconstitutional, governments would be subject to substantial liabilities from refunds of those unconstitutional taxes. Accordingly, in the absence of statutory authority, taxes voluntarily, although erroneously paid, albeit under an unconstitutional statute, cannot be refunded. *Berry v. Daigle*, 322 A.2d 320, 326–27 (Me.1974); 72 Am.Jur.2d, State & Local Taxation, p. 1074, 1087 (1974), *cited in* 509 A.2d at 781.

Appellants paid the intangible property tax believing the law constitutional. Appellants did not file a protest with the Director but did join in the declaratory judgment action against the Director filed by more than 90 savings and loan associations which resulted in the tax being declared unconstitutional in *Jefferson Savings and Loan.*

■ The refund of taxes illegally enacted is ordinarily a matter of governmental grace. On grounds of public policy the law discourages suit for the refund of taxes illegally collected, and many restrictions are imposed on their recovery. It is generally held that taxes voluntarily paid without compulsion, although levied under an unconstitutional statute, cannot be refunded without the aid of statutory remedy. 51 Am.Jur.Taxation, § 1167, *cited in State ex rel. S.S. Kresge Co. v. Howard*, 357 Mo. 302, 208 S.W.2d 247 (banc 1947). Had these appellants failed to pay the intangible property tax, they would have been subjected by the Director to assessment of a penalty for delinquent payment of taxes. § 148.530, RSMo 1978. Payment to avoid harsh penalties is not voluntary payment of taxes. *Manufacturer's Casualty Ins. Co. v. Kansas City, Mo.*, 330 S.W.2d 263, 267 (Mo.App.1959). Appellants thus did not pay the taxes voluntarily, and they subsequently questioned the legality of the tax.

Respondent Director and intervenors classify the taxes as illegally collected taxes and because the legislature included only the terms "overpayment" and "erroneous payment of taxes," argue there can be no refund because there is no express intent by the legislature to recognize refund of taxes declared unconstitutional. Appellants argue that respondent Director focuses only on the cause and not the effect of the payment. They claim they paid more to the state than was necessary because the tax was unconstitutional, their liability was zero, and therefore they made an overpayment to respondent Director.

Section 136.035 is subject to the ordinary rules of statutory construction and interpretation. The word "overpayment" in section 144.190 [2] has been interpreted by this

**2.** Section 144.190, RSMo 1986, provides:

**Refund of overpayments—claim for refund—time for making claims.**—1. If a tax has been incorrectly computed by reason of a clerical error or mistake on the part of the director of revenue, such fact shall be set forth in the records of the director of revenue, and the amount of the overpayment shall be credited on any taxes then due from the person under sections 144.010 to 144.510, and the balance shall be refunded to the person his administrators or executors, as provided for in section 144.200.

2. If any tax, penalty or interest has been paid more than once, or has been erroneously or illegally collected, or has been erroneously or illegally computed, such sum shall be credited on any taxes then due from the person

Court in *Kleban*, 247 S.W.2d at 839, to include taxes illegally collected. Although the refund for overpayments in section 144.190 refers to sales and use tax, the statute is an aid in interpreting what meaning the legislature intended for the terms "overpayment" and "erroneous." An erroneous or illegal tax is one levied without statutory authority. Black's Law Dictionary, 486, (5th ed. 1979). Overpayment is a discharge of an obligation or debt in excess of payment. *Id.* at 994, 1016. The provisions of section 144.190 are for the recovery of sales taxes which have been incorrectly computed, or of sales taxes paid twice, or of sales taxes erroneously or illegally collected, or of sales taxes illegally imposed. *Hern v. Carpenter*, 312 S.W.2d 823, 828 (Mo.1958).

In construing statutes, the court's primary responsibility is to ascertain the intent of the General Assembly from the language used and to give effect to that intent. *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874 (Mo. banc 1983). In determining legislative intent, the court must first consider the language of the statute and words employed in their plain and ordinary meaning, *State ex rel. D.M. v. Hoester*, 681 S.W.2d 449 (Mo. banc 1984). Provisions of the entire legislative act must be construed together and if reasonably possible all provisions must be harmonized, *Collins v. Director of Revenue*, 691 S.W.2d 246 (Mo. banc 1985).

Title X, Taxation and Revenue, Missouri Statutes, contains both sections 144.190 and 136.035. Although this Court has interpreted the words "overpayment" and "erroneous" to include the meaning "illegal" in section 144.190, *Kleban; Hern,* the terms "overpayment" and "erroneous" in section 136.035 have not been defined by the legislature or interpreted by this Court. Where language of a statute is clear and unambiguous there is no room for construction. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397 (Mo. banc 1986). A statute should not be construed to lead to an absurd result. *State ex rel. Zoological Park Subdistrict of City and County of St. Louis v. Jordan*, 521 S.W.2d 369 (Mo.1975). A reasonable construction of the terms "overpayment" and "erroneous" as used in section 136.035 includes the term "illegal" as seen from other interpretations by this Court, the plain meaning of the language and the definition in Black's Law Dictionary.

The State of Missouri has thus consented to a refund of any overpayment, erroneous or illegal payment, which would include a tax declared unconstitutional, of any tax on intangible personal property by the terms of section 136.035; and all appellants that have followed the proper procedures for applying for a refund, are entitled to a refund of that overpayment, erroneous or illegal payment.

Respondent Director claims when the tax was declared unconstitutional there was no next apportionment to a political subdivision from which to make a refund; therefore, the legislature did not authorize the refund of taxes collected prior to the declaration of unconstitutionality.

Ten months after the decision in *Jefferson Savings and Loan,* respondent Director distributed $12,800,000 in intangible taxes collected before section 148.480 was held unconstitutional. Missouri has intangible taxes other than the taxes in section 148.040, RSMo 1986, including taxes on intangible personal property, banking institutions, credit institutions, credit unions, insurance companies and farmers cooperative

under sections 144.010 to 14.510, and the balance, with interest as determined by section 32.065, RSMo, shall be refunded to the person, but no such credit or refund shall be allowed unless duplicate copies of a claim for refund are filed within three years from date of overpayment.

3. Every claim for refund must be in writing under oath, and must state the specific grounds upon which the claim is founded.

Any refund or any portion thereof which is erroneously made, and any credit or any portion thereof which is erroneously allowed, may be recovered in any action brought by the director of revenue against the person. In the event that a tax has been illegally imposed against a person, the director of revenue shall authorize the cancellation of the tax upon his record.

credit associations. All intangible taxes were commingled in one fund by respondent Director. There was a next apportionment from this fund and the holding that intangible property tax on savings and loan associations was unconstitutional did not prevent respondent Director from disbursing intangible taxes to eligible recipients.

Intervenors claim this Court held that the tax paid by appellants did not meet the constitutional definition of an intangible personal property tax. *Jefferson Savings and Loan*, 626 S.W.2d at 644, *citing* art. X, § 4(b), Mo. Const. Intervenors' analysis of *Jefferson Savings and Loan* is flawed. Suffice to say appellants and respondent in this case agree that the holding in *Jefferson Savings and Loan* dealt with the constitutionality of the intangible property tax. The Court also specifically found that section 148.480 violated art. X, section 4(b), and concluded the intangible property tax was unconstitutional. *Id.*

## II.

All appellants except Community Federal Savings & Loan Association filed timely appeals from the Director's final decision in compliance with section 161.273, RSMo (transferred now section 621.050, RSMo 1986).[3] Appellant Community Federal failed to file its appeal within the 30-day time limit. It argues that its appeal should not be dismissed, however, because the decision of the Director against Community Federal was not final until the decisions against all its merged associations had been received, Community Federal having acquired those institutions by merger before the decisions were mailed.

■ Community Federal acquired Citizens on March 4, 1980; Plaza on March 2, 1981; Crystal City on August 3, 1981; Car-

ondelet on February 28, 1983; and First Federal on February 28, 1983. Respondent Director issued final decisions denying the requests of Carondelet, First Federal and Community Federal on November 23, 1982; Citizens and Plaza on December 20, 1982; and Crystal City on December 22, 1982. These final decisions were sent directly to those appellants. Carondelet and First Federal filed timely appeals with the AHC on December 17, 1982. Community Federal appealed in its own behalf and in behalf of Citizens, Plaza and Crystal City on January 19, 1983. Community Federal's own appeal was received by the AHC 57 days after respondent Director's mailing of the decision against Community Federal; the others were timely. Failure to comply with statutory time for appeal in an administrative proceeding results in a lapse of jurisdiction and loss of right of appeal. *Springfield Park Central Hospital v. Director of Revenue*, 643 S.W.2d 599 (Mo.1983); *Randles v. Schaffner*, 485 S.W.2d 1 (Mo.1972); *Cardinal Glennon Memorial Hospital Coffee Shop v. Director of Revenue*, 624 S.W.2d 115 (Mo.App.1981).

■ Appellant Community Federal argues that it notified respondent Director by letter before the final decision was made that the merger of the three institutions had occurred and that Community Federal was succeeding in interest to all of the refund claims of Citizens, Crystal City and Plaza. Appellant contends it owned all of the claims and the merged entities no longer existed. Appellant claims the earliest it could appeal the decision of respondent Director was December 22, 1982, the date the last of the merged institutions received its final decision. Thus, appellant contends when it filed its appeal on the denial of its

---

**3.** Section 621.050, RSMo 1986, provides:

**Administrative hearing commission to hear appeals from director of revenue—procedures—interest—burden of proof.**—1. Except as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue. Any person or entity who is a party to such a dispute shall be entitled to a hearing before the administrative hearing commission by the filing of a petition with the administrative hearing commission within thirty days after the decision of the director is placed in the United States mail or within thirty days after the decision is delivered, whichever is earlier. The decision of the director of revenue shall contain a notice of the right of appeal in substantially the following language: ....

claim for refund on January 19, 1983, its appeal as to its own adverse decision was timely filed.

Appellant Community Federal cites no authority for this argument. Its vice president and controller admitted that there was an internal problem with routing of mail by Community Federal personnel, and he received the final decision between December 23, 1982, and December 30, 1982. Nothing in section 161.273 (now section 621.050), 4 CSR 20–3.040, or the case law allows for an argument of delay by excusable neglect. The claims for refunds were made by separate entities and were separate causes of actions. Community Federal could have protected itself in the same manner, but failed to do so. The decision against Community Federal was final on November 22, 1982, and mailed on November 23, 1982. December 23, 1982, was the last day on which Community Federal could have obtained jurisdiction from the Commission for its appeal. Its request for refund was properly dismissed.

### III.

■ Intervenors claim the AHC properly denied appellants' claims for refund because such refunds would violate the Missouri Constitution, art. X, section 21, which prohibits the state from reducing its proportion of the costs of free public schools.

This claim is not yet ripe. There has been no determination how refunds would be paid to appellants. Only those adversely affected would have standing to make a constitutional challenge. *State ex rel. Reser v. Rush,* 562 S.W.2d 365 (Mo. banc 1978). Intervenors must wait for the decision by this Court and subsequent determination how refunds will be paid. Only then can they know whether they are adversely affected and take whatever legal action may be appropriate.

The dismissal against Community Federal Savings & Loan Association of its claim for refund is affirmed; the decisions against all other appellants on their claims for refund are reversed.

BILLINGS, C.J., BLACKMAR, ROBERTSON and RENDLEN, JJ., and COVINGTON, Special Judge, concur.

WELLIVER, J., concurs in part and dissents in part in separate opinion filed.

DONNELLY, J., not sitting.

WELLIVER, Justice, concurring in part and dissenting in part.

I concur in part and dissent in part. I dissent from that part of the principal opinion which would deny Community Federal's refund on the purported technicality of late filing.

Merger of savings and loan associations is controlled by § 369.084, RSMo 1986, which provides:

369.084. Merger, effect of.—When the merger or consolidation becomes effective:

(1) *The several associations parties to the plan of merger or consolidation shall be a single association, which, in the case of a merger, shall be that association designated in the plan of merger as the surviving association,* and in the case of a consolidation, shall be the new association provided for in the plan of consolidation;

(2) *The separate existence of all associations parties to the plan of merger or consolidation, except the surviving or new association, shall cease;*

. . . .

(5) All property, real, personal and mixed, and all debts due on whatever account, and all other choses in action, *and all and every other interest, of or belonging to or due to each of the associations so merged or consolidated shall be taken and deemed to be transferred to and vested in such single association without further act or deed;* and the title to any real estate, or any interest therein, under the laws of this state vested in any of such associations shall not revert or be in any way impaired by reason of such merger or consolidation;

(6) The surviving or new association shall thenceforth be responsible and liable for all the liabilities and obligations of each of the associations so merged or consolidated; *and any claim existing or action or proceeding pending by or*

*against any of the associations may be prosecuted to judgment as if the merger or consolidation had not taken place, or the surviving, or new association may be substituted in its place, and neither the rights of creditors nor any liens upon the property of any of the associations shall be impaired by the merger or consolidation; ...*

(Emphasis added.)

Clearly, the statute authorizes that "any claim existing or action or proceeding pending by or against any of the associations may be prosecuted to judgment" separately and as if no merger had occurred, or, may be treated as a single claim with the surviving corporation "substituted in its place." Inherent in the latter is the right of the surviving corporation to make the appeal based upon the last judgment rendered against one of the component parts of the surviving corporation. There is no prejudice to the state whether the claim be treated in separate parts or as a single claim of the surviving corporation, or both.

Community Federal, like the others, is entitled to the refund and the cause should be reversed as to all parties.