**FOREST HEALTH SYSTEMS, INCORPORATED OF MISSOURI, Appellant,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent.**

**No. WD 47985.**

Missouri Court of Appeals,
Western District.

April 12, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 31, 1994.

Application to Transfer Denied
Aug. 15, 1994.

Richard Lane Schnake, Springfield, for appellant.

Karolin R. Solorzano, Jefferson City, for respondent.

Before KENNEDY, P.J., and ULRICH and ELLIS, JJ.

KENNEDY, Judge.

The Division of Medical Services claims the right to recoup certain alleged Medicaid overpayments made by the Division to Forest Health Systems, for services rendered to Medicaid patients by Springfield Park Central Hospital, an acute care psychiatric hospital operated by Forest in Springfield, Missouri.

The years in question in this case are 1985 through 1988. The Division sought to recoup a part of the amounts paid to Park Central for those years, and Park Central commenced the present proceeding before the Administrative Hearing Commission, challenging the Division's right to recoupment in any amount, and also challenging the amount sought to be recouped.

The Division pays the hospital, virtually automatically, without audit, upon the hospital's statement for services rendered to Medicaid patients. The statement is audited later. If the Division finds, upon audit, that it has overpaid the hospital, it seeks to recoup from the hospital the amount of the overpayment.

The Administrative Hearing Commission held the Division had a right to pursue the recoupment. Park Central appealed to the Circuit Court of Cole County, which affirmed the Administrative Hearing Commission decision.

Park Central has appealed to this Court. We affirm the judgment of the circuit court.

Park Central, in this appeal, challenges that part of the Division's claim for recoup-

ment which is for *excessive days* of inpatient hospital care billed by the hospital, and paid by the Division. The Division has established, for purposes of Medicaid reimbursement, a maximum of the 75th percentile of the Professional Activity Study (PAS), a nationwide study that determines the average length of stay for patients for various categories of illnesses. The 75th percentile represents the maximum number of days at which 75 percent of all patients with a given illness would be hospitalized.

The hospital, however, may not discharge a patient when the patient reaches the time limit. It must continue to render inpatient care to a patient until he or she is discharged by a physician. In many instances, Medicaid patients receive hospital services beyond the maximum for Medicaid reimbursement. Since Medicaid patients are normally without financial means, the hospital is unable to collect the deficiency from them.

## I.

The first issue on this appeal is whether the Division may recoup any Medicaid payments for the years in question, even allowing that the payments were in excess of the allowable maximum.

The hospital claims none of the Medicaid payments it received during the years in question are subject to recoupment by the Division, because the aggregate Medicaid payments for any year do not exceed the Hospital's aggregate Medicaid charges for that year.[1] The Administrative Hearing Commission ruled against the hospital on this point, and we affirm that ruling.

The hospital bases its argument upon 13 CSR 70–15.010, paragraph 1, which says in part: "As described in paragraph (5)(D)2. of this plan, as part of each hospital's fiscal year-end cost settlement determination, a comparison of total *Medicaid-covered aggre-*

*gate charges* and total Medicaid payments will be made and any hospital whose aggregate Medicaid per-diem payments exceed *aggregate Medicaid charges* will be subject to a retroactive adjustment." (emphasis supplied). "Charges," in the hospital's interpretation of this rule, are simply the established rates charged by the hospital to its patients. (We hold, however, as hereafter explained, this argument misinterprets the terms "Medicaid-covered aggregate charges" and "Medicaid charges.")

The hospital's Medicaid payments for none of the years in question exceeded its charges to Medicaid patients. That being so, according to Hospital's argument, the Division, under the terms of its above-cited rule, has no claim for recoupment of any amount.

The Division, however, points to 13 CSR 70–15.010(5)(D)2., which says: "... the state shall perform any reviews or audit confirmations deemed appropriate to fulfill the requirement that Title XIX payments do not exceed *reasonable Title XIX costs.* If Title XIX payments do exceed *reasonable Title XIX costs,* the overpayment will be recouped. With the exception of those hospitals identified by the Medicare intermediary as nominal charge providers, the lower of aggregate per-diem cost or aggregate per-diem charge requirement will be applied to all hospitals." (emphasis supplied).

This latter rule, says the Division, supports its claim for recoupment, since aggregate Medicaid payments by Division to Hospital exceeded Hospital's Medicaid costs in each of the years in question.

■ We must give effect to all the language of the rule, reconciling seemingly inconsistent or contradictory language, if it is possible to do so. We may not disregard any of the language of the rule. *Community Fed. Sav. & Loan Ass'n v. Director of Reve-*

1. Medicaid payments to hospitals are based upon the hospital's allowable costs, calculated according to formulae established by state regulation. 13 CSR 70–15.010(2)(A). *See Rolla Manor v. Missouri Dept. of Social Serv.,* 865 S.W.2d 812 (Mo.App.1993); *St. Louis South Park v. Missouri Dept. of Social Serv.,* 857 S.W.2d 304 (Mo.App. 1993). Medicaid costs would rarely equal charges. If the hospital's costs do exceed its

charges, though, it is limited by its Title XIX Participation Agreement to its charges. The hospital agrees "that charges will not exceed those to the general public for identical services." Also, 13 CSR 70–15.010(5)(D)2., provides "... the lower of aggregate per-diem cost or aggregate per-diem charge requirement will be applied to all hospitals."

*nue,* 752 S.W.2d 794, 798 (Mo. banc), *cert. denied,* 488 U.S. 893, 109 S.Ct. 231, 102 L.Ed.2d 221 (1988).

We have concluded that the Division's claim for recoupment is supported by the cited rules. We would find it curious that the Division could recoup Medicaid overpayments only upon a showing that its aggregate Medicaid payments to a hospital for a given year did not exceed the hospital's aggregate charges to Medicaid patients—even though those payments clearly exceeded allowable costs in serving the Medicaid patients. Such an interpretation of the rules would defeat nearly every claim for recoupment by the Division. Since Medicaid payments to hospitals are paid virtually automatically upon claims submitted by the hospitals, the Division's later audit of those claims, upon which claims for recoupment are made, would in most instances be a useless thing.

In the present case, for example, the hospital's Medicaid and third-party payments for Medicaid patients totalled $1,957,833 for fiscal 1985, whereas its charges for those patients totalled $2,692,460. For the fiscal years 1986 through 1988, its Medicaid and third-party payments totalled $6,479,800, while its charges were $9,751,723.

We nowhere find any support for the hospital's assumption that the term "Medicaid-covered charges" or "Medicaid charges," as those terms are used in 13 CSR 70.15.010, paragraph 1, have the same meaning as the hospital's established rates, as if the word "charges" were not modified by "Medicaid-covered" or "Medicaid." "Medicaid-covered charges" and "Medicaid charges" refer to that part of the hospital charges which are allowable for Medicaid payment; the terms do not include all the charges which the hospital may make to the patient. There is, then, no difference among "Medicaid-covered charges" and "Medicaid charges," of Paragraph 1, and "reasonable Title IX costs" of Paragraph 2. The terms are used interchangeably. The terms refer to the hospital's recoverable costs for hospital services and supplies furnished to Medicaid patients. This interpretation of "Medicaid-covered charges" and "Medicaid charges" is borne out by the clause "As described in paragraph

(5)(D)2. of this rule ...," which introduces the sentence from paragraph (1) upon which the hospital relies. That clause imports into the sentence the provisions of paragraph (5)(D)2., which is the rule upon which the Division relies.

We hold, then, that the Administrative Hearing Commission correctly held that the Division was not prevented from recouping Medicaid overpayments by the fact the annual aggregate of Medicaid payments did not exceed the aggregate of hospital charges to Medicaid patients.

## II.

For its second point, the Hospital says the rule which limits Medicaid payments to those days within the PAS 75th percentile, is in violation of the Boren Amendment to the Omnibus Budget Reconciliation Act of 1981. The relevant portion of the Boren Amendment, upon which the hospital relies, reads as follows, with hospital's emphasis added:

A state plan for medical assistance must ... provide ... for payment ... of the hospital services ... through use of rates ... which the State finds, and makes assurances satisfactory to the Secretary, are *reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards* and to assure that individuals eligible for medical assistance have reasonable access ... to inpatient hospital services of adequate quality....

42 U.S.C. § 1396a(a)(13)(A) (emphasis added).

The Administrative Hearing Commission, citing *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69, 75 (Mo. banc 1982) ("The declaration of the validity or invalidity of statutes and administrative rules thus is purely a judicial function."), held it lacked authority to determine the validity of Missouri's reimbursement scheme under the Boren Amendment, and so did not rule the issue. The circuit court, on appeal, af-

firmed the Administrative Hearing Commission on all points.

Neither the hospital nor the Division addresses the question of the Administrative Hearing Commission's authority, or lack of authority, to decide its Boren Amendment challenge to the validity of Missouri's Medicaid reimbursement scheme. They join issue on the merits of the point.

■ As the hospital develops this point, it argues that the State has conducted no hearings or surveys, and has made no findings which satisfy the procedural requirements of the Boren Amendment that the State find, and make assurances to the Secretary, that its Medicaid rates comply with the Boren Amendment standards. This record, however, contains no evidence that the State did not take all necessary preliminary procedural steps to bring its Medicaid payment formula to the Boren Amendment standard. The burden of proof on this issue was the hospital's; it was not the Division's burden to prove that all necessary steps had been taken preliminary to the adoption of the 75th percentile standard. *Lett v. Magnant*, 965 F.2d 251, 255 (7th Cir.1992).

■ The Hospital then argues that the 75th percentile cut-off is arbitrary and unfair to the hospital, and is therefore in violation of the substantive standards of the Boren Amendment. It points out that the application of the 75th percentile cut-off deprives it of payment for a total of 2,245 patient days for the four years in question, a total of $355,051. Since, even for those days within the Medicaid limits, the hospital can collect only Medicaid costs, which includes no profit, the unpaid days represent a loss to it.

The hospital does not make the showing which is necessary to defeat the State's 75th percentile Medicaid payment limitation.

It should first be noted that the hospital's participation in the Medicaid program is voluntary. *Weaver v. Reagen,* 886 F.2d 194 (8th Cir.1989). Not only is the hospital not entitled to a profit, *Department of Social Serv. v.*

*Villa Capri Homes,* 684 S.W.2d 327, 334 (Mo. banc 1985), even some of its costs (e.g., depreciation) are not allowable. *Id.* The hospital knows this when it enters into the Medicaid program.

The Boren Amendment sets a mechanism for assuring that the allowable Medicaid charges are established upon the experience of a broad base of hospitals; the experience of a single hospital proves nothing. *AMISUB(PSL) v. State of Colo. DSS,* 879 F.2d 789 (10th Cir.), *cert. denied,* 496 U.S. 935, 110 S.Ct. 3212, 110 L.Ed.2d 660 (1990), cited by the hospital, was an action brought by three hospitals, challenging Colorado's system for reimbursement for inpatient hospital services as in violation of the Boren Amendment. They sought injunctive and declaratory relief under 42 U.S.C. 1983.[2] The hospitals claimed Colorado's Medicaid reimbursement scheme violated the Boren Amendment in that it did not give the hospitals their "reasonable costs" of serving Medicaid patients. The evidence in that case was that the Colorado system allowed the hospital Medicaid rates equal to .88 of average Medicare costs, given the same DRG (diagnostic related grouping) This reduction (from Medicare costs) was not challenged by the hospitals. But payments were further reduced 54 per cent by a "budget adjustment factor." This budget adjustment factor was challenged by the plaintiff hospitals. There was evidence that "no Colorado hospital, no matter how efficiently and economically operated, would be adequately and reasonably reimbursed for inpatient hospital services." *Id.* The court, affirming the trial court, said: "The evidence before us reveals arbitrary and capricious actions (on the part of the Colorado Medicaid Agency)." *Id.* at 801.

*AMISUB(PSL)* is a contrast to the present case, for there is no evidence in our case that the Medicaid payment rates, even with the 75th percentile limit on patient days, provides less than a "reasonable and adequate" payment rate for "efficiently and economically operated" hospitals. "[F]ederal

---

**2.** One could presumably test the validity of the State's Medicaid reimbursement system by declaratory judgment action, section 536.050.1. Paragraph 2 of section 536.050 has been held

unconstitutional. *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69, 76 (Mo. banc 1982).

Medicaid law does not require *actual* reimbursement." *Id.* at 798.

We hold there is no showing in this record that the 75th percentile rule as to Medicaid reimbursement is in violation of the Boren Amendment.

Judgment affirmed.

All concur.