**144**

**FRENE VALLEY CORPORATION d/b/a**
Frene Valley Health Center,
Plaintiff–Appellant,

v.

**DEPARTMENT OF SOCIAL SERVICES,
DIVISION OF MEDICAL SERVICES,**
Defendant–Respondent.

No. 68940.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 28, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 10, 1996.

Application to Transfer Denied
Aug. 20, 1996.

Husch & Eppenberger, Harvey M. Tett-lebaum, Jefferson City, and Berkemeyer & Barks, John Berkemeyer, Herman, for Appellant.

Melanie G. Wilmes, Dept. of Social Services, Div. of Legal Services, Jefferson City, for Respondent.

HOFF, Judge.

Appellant, Frene Valley Corporation (Frene Valley), appeals from the judgment of the Circuit Court of Gasconade County, which affirmed the decision of the Missouri Administrative Hearing Commission (Commission) finding in favor of the Missouri Department of Social Services, Division of Medical Services (DMS). We affirm.

Frene Valley is a 120–bed skilled nursing/intermediate care facility in Hermann, Missouri, which provides long-term care.

Frene Valley is licensed and certified to participate in the Medicaid Program under Title XIX of the Social Security Act, 42 U.S.C. § 1396d, pursuant to § 198.045 RSMo 1986. The Medicaid Program allows nursing home facilities like Frene Valley, to be reimbursed for the cost of caring for Medicaid patients who reside at their facility. DMS sets the Medicaid per-diem reimbursement rates for participating nursing home facilities in the State of Missouri.

In October, 1988, Frene Valley opened a newly constructed nursing home facility to replace its old facility which had been in operation since 1955. Pursuant to DMS regulations under which Medicaid reimbursement rates are authorized and determined, a newly constructed facility may request that its rate be redetermined. 13 CSR 70–10.010(7)(B).[1] Until the time that a permanent per-diem rate is established, DMS grants a tentative per-diem rate based upon a proposed budget from the facility. *Id.* In order to determine whether the tentative rate will become the permanent per-diem rate, "[a]ll new construction facility providers ... shall submit to the Division of Medical Services a cost report ... within ninety (90) days of the close of their first twelve (12) months of operation." 13 CSR 70–10(7)(B)2. "This cost report shall be based on actual operating costs for the first twelve months of operation." *Id.* DMS studies this report, and after an audit, uses it to establish the new facility's permanent per-diem rate. 13 CSR 70–10(7)(B)3.

During the administrative hearing, the parties stipulated Frene Valley's initial twelve month cost reporting period encompassed April 19, 1989 to April 30, 1990, a total of 377 days. When DMS audited Frene Valley's cost report to determine its permanent per-diem rate, certain expenditures were disallowed. First, DMS disallowed in its entirety a $10,000.00 bonus paid to an employee for her twenty-five years of service. Additionally, DMS disallowed $765.00 that Frene Valley paid in FICA taxes related

**1.** Since DMS audited Frene Valley in 1990, 13 CSR 70–10.010 has been updated. As of February 29, 1996, 13 CSR 70–10.010 is now renumbered and designated as 13 CSR 70–10.015. We use the older numbers as they were applicable and current at the time this case was heard by the Commission.

to the bonus. Second, DMS disallowed $207,495.13 of $259,038.68 Frene Valley had used during the twelve month cost reporting period to purchase bulk quantities of adult diapers and underpads.

Frene Valley appealed to the Commission which, following a hearing, affirmed the DMS decision modifying it in part. The Commission held DMS must raise Frene Valley's per patient day rate by $0.05 to reflect an allowable portion of the employee bonus for a total of $1,786.99 per year. The Commission also concluded the disallowance of $207,346.44 for adult diapers and underpads was correct. Frene Valley then appealed to the circuit court which affirmed the Commission's decision. This appeal followed.

■ This court reviews the findings and decision of the Commission and not the judgment of the circuit court. *City of Cabool v. Mo. State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). We review the Commission's decision to determine whether it is supported by substantial and competent evidence based upon the entire record, whether it constitutes an abuse of discretion, is unauthorized by law, or is arbitrary, capricious or unreasonable. *Monroe County Nursing Home Dist. v. Dep't of Social Services,* 884 S.W.2d 291, 292 (Mo.App. E.D.1994).

■ In the first point on appeal, Frene Valley contends the Commission erred in disallowing $8,213.01 of the $10,000.00 bonus paid to an employee for twenty-five years of service pursuant to its bonus plan. Frene Valley argues the Commission wrongly relied on 13 CSR 70–10.010(3)(C) of the DMS plan, which merely defines the term "cost report", rather than relying on 13 CSR 70–10.010(8)(H) of the reimbursement plan which provides that the value of services performed by an employee shall be included as an allowable cost to the extent actually compensated. Frene Valley asserts that subsection (8)(H)1 controls independently of subsection (3)(C).

■ When examining a provision or subsection, it must be viewed in the light of the entire regulation, and, if possible, harmonized with that regulation. *Americare Sys., Inc. v. Mo. Dep't of Social Services,* 808 S.W.2d 417, 420 (Mo.App. W.D.1991), citing *Lindsay v. Hopkins,* 788 S.W.2d 776, 779 (Mo.App. E.D.1990). This court must give effect to all the language contained in the regulation, reconciling seemingly inconsistent or contradictory language, if it is possible to do so. *Forest Health Sys., Inc. of Mo. v. Mo. Dep't of Social Services, Div. of Medical Services,* 879 S.W.2d 566, 568 (Mo.App. W.D. 1994). We may not disregard any of the language of the rule. *Id.*

■ This court reviews the evidence in the light most favorable to the administrative body, viewed together with all reasonable inferences, and if the evidence merits either of the two opposed findings, we are bound by the administrative determination. *Bd. of Educ., Mt. Vernon Sch. v. Shank,* 542 S.W.2d 779, 782 (Mo. banc 1976).

13 CSR 70–10.010(3)(C) provides:

Cost report—The cost report shall detail the cost of rendering covered services for the fiscal period. Providers must file the cost report on forms provided by and in accordance with the procedures of the department.

. . . .

13 CSR 70–10.010(8)(H)1 provides:

(H) Value of Services of Employees.

1. Except as provided for in this rule, the value of services performed by employees in the facility shall be included as an allowable cost area to the extent actually compensated, either to the employee or to the supplying organization.

Reading each subsection in light of the entire regulation and giving effect to all the language contained therein, subsection (3)(C) restricts the costs that are allowable for the value of services under subsection (8)(H) to those rendered during the cost reporting period.

■ Viewing the evidence in the light most favorable to the Commission, this court finds that in February 1990, Frene Valley paid a $10,000.00 bonus to an employee who had worked at the nursing home facility for twenty-five years. Frene Valley also paid $765.00 in taxes for FICA, so that the employee received a net bonus of $10,000.00.

This employee had been working for Frene Valley since February 26, 1965 and received a bonus every five years since 1975.[2] The awards compensated the employee for each five year period. Therefore, the $10,000.00 bonus plus the matching $765.00 in taxes is an award of $2,153.00 per year for the five years subsequent to the last bonus paid.

The bonus was paid for the value of the employee's services until the employee's anniversary date, February 26, 1990. The bonus was paid for 312 days of employment in comparison to a 377 day cost reporting period, 83% of that time period. Therefore, the allowable reimbursable cost relating to the $10,000.00 bonus for the value of services rendered during the cost reporting period is $1,786.99 (83% of $2,153.00). To recalculate the patient day rate, the total allowable cost is divided by the number of patient days, which is a stipulated 30,779 patient days. The recalculated patient day rate equals $0.058. This figure is adjusted pursuant to minimum utilization under the plan.[3] The ratio of unused capacity is 19.36% as given by DMS in its audit report. Therefore, the allowable portion is 80.64% Taking the patient day rate with the allowable percentage for minimum utilization is $0.0468 per patient day (80.64% of $0.058). Therefore, the facility's rate should be increased by $0.05 per patient day per regulation.

This Court finds the Commission's decision regarding the $10,000.00 bonus is supported by substantial and competent evidence based upon the entire record, does not constitute an abuse of discretion, is authorized by law, and is not arbitrary, capricious or unreasonable. First point denied.

▮ In Frene Valley's second point, it contends the Commission erred in finding that subsection (3)(C) restricts the reimbursement of $207,346.44 for allowable cost purchases of adult diapers and underpads that were consistent with the efficient and economical operation of the facility.

As laid out above, subsection (3)(C) provides that the allowable reimbursable costs for the reporting period shall be for "... the cost of rendering covered services *for the fiscal period.*" (emphasis added). Subsection (5)(A) provides that the "... services and supplies covered by the per-diem reimbursement rate under this plan, *and which must be provided,* ... include ... [a]ll general nursing services including but not limited to ... incontinency care ...." (emphasis added). Within the instructions that show facilities how to prepare cost reports, medical supplies is defined as the "... [c]ost of items, other than drugs, *used in providing nursing care to patients* (e.g .... disposable incontinency care items ...)." (emphasis added).

Viewing the evidence in the light most favorable to the Commission, the record reveals that Frene Valley spent $28,692.24 on adult diapers and underpads during the first seven months of the cost reporting period. During the last five months, however, Frene Valley spent $230,346.44 on adult diapers and underpads. During the administrative hearing, the administrator of the nursing home admitted that some of the diapers and pads purchased within the last five months of the cost reporting period were stored for future use.

Reading each subsection in light of the entire regulation and giving effect to all the language contained in the regulation, subsections (3)(C) and (5)(A), along with the instructions for the cost report, restrict the costs that are allowable for medical supplies such as adult diapers and underpads to the cost of those supplies that were actually used during the cost reporting period. The allowable cost for the last five months of the reporting period should reflect the actual cost of providing incontinency care for nursing home residents during those five months.

▮ A total of $259,038.68 was spent on incontinency care by Frene Valley during the cost reporting period. During the first seven

2. The employee did not receive a bonus in 1970 after her first five years, because the bonus plan was implemented in 1972.

3. Pursuant to 13 CSR 70–10.010(8)(O), minimum utilization adjusts the patient day rate appropri-

ately if the facility is below 90% occupancy. It also automatically adjusts the patient day rate to allow for variable costs in fixed costs, to reflect 90% occupancy regardless of the actual occupancy of the facility.

months of the cost reporting period, $28,692.24 was spent and used. Therefore, an average of $4,098.89 was spent and used per month. During the last five months of the cost reporting period, the cost of providing incontinency care for nursing home residents was an average of $20,494.45. This amount is adjusted by 11.5 percent to reflect an increase in the facility's resident population, adding $2,356.86 to the allowable cost. Therefore, the allowable cost for the last five months of the cost reporting period is $22,851.31, making the total allowable cost for the twelve month reporting period $51,543.55.

The Commission's decision disallowing $207,495.13 for adult diapers and pads for the twelve month reporting period is supported by substantial and competent evidence based upon the entire record, does not constitute an abuse of discretion, is authorized by law, and is not arbitrary, capricious or unreasonable. Second point denied.

Judgment affirmed.

PUDLOWKSI, P.J., and SIMON, J., concur.