ST. LOUIS SOUTH PARK, INC., d/b/a Mercy Convalescent, Respondent,

v.

MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant.

No. WD 46944.

Missouri Court of Appeals, Western District.

April 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied Aug. 17, 1993.

Richard Beaver, Jefferson City, for appellant.

Harvey M. Tettlebaum, Jefferson City, for respondent.

---

1. A desk review is defined under 13 CSR 70–

Before FENNER, P.J., and ULRICH and SMART, JJ.

FENNER, Presiding Judge.

Appellant, Missouri Department of Social Services, Division of Medical Services (the Department), appeals the decision of the circuit court which held that the Department's regulation implementing a new method of calculating the per diem rates to be paid nursing homes (the New Plan) violated equal protection. Respondent, St. Louis South Park, Inc., d/b/a Mercy Convalescent Center (Mercy), is a licensed nursing facility certified to participate in the Missouri Medicaid Program. Mercy successfully argued to the trial court that the New Plan denied it equal protection under the law.

### THE NEW PLAN

On June 18, 1990, the Department published an emergency regulation in the Missouri Register, 13 CSR 70–10.010, effective July 1, 1990, known here as the New Plan. The New Plan set per diem rates for nursing homes participating in the Medicaid program. The 1988 cost report of each participating facility was used as the basis for determining the allowable per diem rate for a given facility.

Each participating facility's 1988 cost report covered a twelve month period based upon the facility's fiscal year ending in 1988. In 1988 there were 376 nursing homes participating in the Medicaid program. Of the total homes, 208, or 55%, had fiscal years ending December 31st. Mercy's fiscal year ended April 30th and it was one of only 5% of the participating homes which had a fiscal year ending April 30th or before.

The criteria for allowable costs as established by the Department are set forth in 13 CSR 70–10.010. The participating facilities' 1988 cost report was used as a basis for establishing allowable costs because that was the most recent year that the Department had received and desk reviewed cost reports from all of the Medicaid participant nursing homes.[1]

10.010(4)(G) as the Division of Medical Services'

Upon review of the facility's 1988 cost report, a base figure for allowable cost was determined. The base figure was multiplied by 111.1% (i.e. increased by 11.1%) and then $1.06 was added as a minimum wage adjustment. The greater of the rate determined by this calculation or the facility's rate in effect on June 30, 1990 became the facility's per diem rate effective for services provided on and after July 1, 1990. The Department then allowed another $.50 to reflect a laundry allowance, $.47 was added as a trend factor [2], and $1.00 was added as a consultant adjustment. The result of these calculations became the facility's rebased rate effective July 1, 1990, subject to a ceiling of $54.95.[3]

The 11.1% adjustment was determined by multiplying 3.7% per year for a three year period (July 1, 1988 to June 30, 1991). The 3.7% represents the average of eight quarters of Gross National Product Implicit Price Deflator. The Administrative Hearing Commission (Commission) found that the 11.1% increase was an inflation factor, but recognized that the Department presented evidence that the increase was tied to a number of economic indicators.

The Commission found that nursing homes experienced increased costs due to inflation between April 30, 1988 and December 31, 1988. The Commission further found that since Mercy's fiscal year ended April 30, 1988, Mercy's rate under the New Plan did not take into account the inflation between said date and December 31, 1988, while those nursing homes with a fiscal year ending December 31, 1988 were allowed under the regulation to have inflation for the entire year factored into their rebased rates. The Commission determined that it was without authority to declare the regulation unconstitutional. Thus, the Commission affirmed the Department's determination of a rebased rate for Mercy in the amount of $48.49 per diem. On appeal to the circuit court the court held that the Department's failure to factor

in inflation from April 30, 1988 to December 31, 1988 denied Mercy equal protection under the law.

### POINT ON APPEAL

In its sole point on appeal, the Department argues that the circuit court erred by finding that the Department violated Mercy's right to equal protection of the law by setting Mercy's Medicaid rate according to 13 CSR 70–10.010 because all Medicaid providers received a rate which reasonably reflects their cost experience.

Generally, in administrative review cases, an appellate court reviews the decision of the Administrative Hearing Commission. *City of Cabool v. Missouri State Bd. of Mediation*, 689 S.W.2d 51, 53 (Mo. banc 1985). However, administrative agency decisions based upon its interpretation of law are matters of independent judgment for a reviewing court. *Golde's Dep't Stores, Inc. v. Director of Revenue*, 791 S.W.2d 478, 480 (Mo.App.1990). Therefore, in the case at bar, the focus of our review turns to the equal protection question.

"The first principle of [an equitable protection] inquiry is that a duly enacted statute is presumed to be constitutional." *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 512 (Mo. banc 1991). A government action which neither creates suspect classifications nor impinges on a fundamental right will withstand scrutiny if the classification bears some rational relationship to a legitimate government interest. *Id.*

The equal protection guarantee is directed against invidious discrimination. *Id.* "Invidious" means "tending to excite odium, ill will, or envy; likely to give offense; esp., unjustly and irritatingly discriminating." *Bray v. Alexandria Women's Health Clinic*, — U.S. —, —, 113 S.Ct. 753, 761–62, 122 L.Ed.2d 34 (1993)

review of a provider's cost report without on site audit.

**2.** The $.47 trend factor is 1% of the average rate of all Medicaid facilities on April 30, 1990.

**3.** Mercy's rebased rate effective July 1, 1990 was set at $48.49 per patient day under the New Plan.

(citations omitted). The constitutional safeguard of equal protection is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. *Mahoney,* 807 S.W.2d at 512 (quoting *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961)). In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classification is imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970) (citation omitted).

■ The question presented in the case at bar is whether 13 CSR 70–10.010 denied Mercy equal protection by invidiously discriminating against Mercy due to the fact that other members of Mercy's class under the regulation were allowed to factor in inflation that was experienced from April 30, 1988 to December 31, 1988, while Mercy was not.

The Missouri Medicaid Program determines reimbursement rates for participating nursing homes prospectively on a basis the state determines as reasonable and necessary for efficient care providers. The Medicaid program does not purport to reimburse for actual costs. Rather, reimbursement is for allowable costs as determined by and in accordance with the state regulations. The state has a legitimate interest in controlling the costs of its Medicaid program in setting reimbursement rates for participating nursing homes.

It is not unreasonable for the state to calculate a base figure for allowable costs from the data provided by the participating facilities in their last reviewed cost report. Using said reports serves to simplify accounting procedures and places the facilities on an equal footing by reviewing a full twelve months of costs for each facility thereby taking into account any seasonal fluctuations in costs and averaging cost by a common denominator of twelve months.

The fact that different facilities have different fiscal years and their cost reports cover different periods within 1988, does not render the state's regulation for rebasing nursing homes rates unlawful. Although this method of calculation does allow for variables between nursing homes, variables are unavoidable and the state's method of determining rates is not unjustly or irritatingly discriminating.

Mercy argues that it is invidiously discriminated against because other nursing homes are allowed to factor in inflation incurred between April 30, 1988 and December 31, 1988. However, any inflationary variable is outweighed by the state's interest in controlling costs, having an established report upon which to determine costs (i.e., the fiscal year end cost report), and treating the participating nursing homes similarly for a twelve month period based upon their fiscal year end cost reports.

It is Mercy's position that the Department should calculate inflation for the eight months from April 30, 1988 to December 31, 1988, and increase its base rate by the amount of said inflation. Mercy's position does not allow for the fact that approximately 12% of Mercy's 1988 allowable costs are fixed costs not subject to inflation for which an adjustment would have to be made. Moreover, to truly attempt to treat all facilities alike in regard to inflation, each facility would have to be reviewed to determine actual inflation experienced within 1988. To adjust inflation on the basis of some general index would not allow for geographic differences in the cost of goods and services, purchasing habits, efficient management cost containment practices, actual inflation for a given period of time within 1988 and other variables.

Mercy's argument further lacks support from the evidence received reflecting the average cost, excluding capital costs, for all participating facilities from the 1988 cost reports. Mercy's evidence in this regard reflected that the average daily cost for facilities with a fiscal year ending April 30, 1988 was $42.18, while the average cost for facilities with a fiscal year ending De-

cember 31, 1988 was $39.28. This does not support Mercy's argument that it was denied equal protection by not being allowed to factor in inflation from April 30th to December 31st. If inflation were a significant factor, the average cost of facilities reporting December 31st would be expected to be higher than for those reporting April 30th.

To treat all participating facilities absolutely the same, if even possible to accomplish, further presents the potential for a great deal of research and additional accounting procedures that would potentially delay implementation of the revised rates and increase administrative costs to the detriment of the government and the program participants alike.

It is not unreasonable for the Department to rebase rates for nursing homes participating in the Medicaid program using the fiscal year end 1988 cost reports of the participating nursing homes without any adjustment for inflation for those nursing homes with fiscal years ending before December 31, 1988. Any inequality that the Department's method of rebasing rates might allow is not unreasonable when measured against the state interest in the efficient distribution of limited public funds. The Department's use of fiscal year end 1988 cost reports was a reasonable, effective and efficient method of treating the participating nursing homes in a similar fashion when balanced against the difficulty and additional accounting that would be required by an effort toward a more precise calculation which sought to consider actual inflation experienced by a given nursing home.

The judgment of the circuit court is reversed. The cause is remanded with directions to reinstate the decision of the Commission to the extent that it affirmed the Department's rebased rate for Mercy in the amount of $48.49.

All concur.