**ROLLA MANOR, INC., D/B/A
Rolla Manor Care Center,
Plaintiff–Respondent,**

v.

**MISSOURI DEPARTMENT OF SOCIAL
SERVICES, DIVISION OF MEDICAL
SERVICES, Defendant–Appellant.**

No. 18535.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 22, 1993.

Motion for Rehearing or Transfer to
Supreme Court Denied Nov. 18, 1993.

Application to Transfer Denied
Dec. 21, 1993.

Richard Beaver, Dept. of Social Services, Div. of Legal Services, Jefferson City, for defendant-appellant.

Husch & Eppenberger, Mark G. Arnold, St. Louis, Harvey M. Tettlebaum and Barbara Miltenberger, Jefferson City, for plaintiff-respondent.

GARRISON, Judge.

The Missouri Department of Social Services, Division of Medical Services (the Department), appeals from a judgment holding that a regulation establishing a new method of calculating amounts to be paid to nursing homes participating in the Missouri Medicaid program denies equal protection of the law. The respondent, Rolla Manor, Inc., d/b/a Rolla Manor Care Center (Rolla Manor), operates a nursing home providing long-term care to Medicaid recipients.

## FACTS

On June 18, 1990, the Department published in the Missouri Register an emergency regulation (the New Plan), later codified at 13 C.S.R. § 70–10.010, which established a new method of calculating per diem rates to be paid nursing homes participating in the Medicaid program. The regulation was to take effect July 1, 1990. The rate of per diem reimbursement under the New Plan was to be the greater of two calculations: (1) the allowable cost[1] per patient day determined by the Department from a desk-reviewed and/or field-audited cost report[2] covering a period ending in calendar year 1988, multiplied by 111.1% (thereby providing an 11.1% increase) plus $1.06 as a minimum wage adjustment[3]; or (2) the per diem rate in effect for services rendered on June 30, 1990. The first alternative provided the greater per diem rate for Rolla Manor, resulting in a rebased rate of $39.75.

Rolla Manor filed a complaint with the Administrative Hearing Commission (AHC) alleging that the New Plan violated equal protection of the law by not treating all providers equally. The basis of the complaint was that some participating nursing homes had fiscal years ending December 31, 1988, and therefore the 11.1% increase was applied to an allowable cost that necessarily included inflation during the entire year. In contrast, Rolla Manor claimed the New Plan discriminated against it because its fiscal year ended March 31, 1988, and its allowable cost to which the 11.1% increase was applied did not include inflation experienced between the end of its fiscal year and December 31, 1988.

The AHC found that the 11.1% adjustment factor under the New Plan represented an inflation adjustment of 3.7% per year for the three-year period of July 1, 1988 to June 30, 1991. It also found that because Rolla Manor had a fiscal year ending earlier than other facilities whose fiscal year ended on December 31, 1988, its new rate reflected less inflation and that "[p]articipants whose fiscal years end on December 31 receive the benefit of having the inflation they experienced from July 1, 1988, through December 31, 1988, counted twice—first in the 1988 allowable costs, which already reflect that inflation, and again in the 11.1 percent inflation adjustment, which includes one-half of 3.7 percent for that period." The Commission concluded, however, that it did not have authority to determine the constitutional validity of the regulation and denied the complaint.

Rolla Manor then sought a review by the circuit court, which held that the Department's application of the 11.1% adjustment violated equal protection guarantees by not

1. 13 C.S.R. 70–10.010(4)(A) defines "allowable cost" as follows:
   (A) Allowable cost. Those costs which are allowable for allocation to the Medicaid program upon the principles established in this regulation. The allowability of costs not specifically addressed in this plan shall be determined by the Division of Medical Services. This determination may be based upon the criteria such as the Medicare Provider Reimbursement Manual (HIM–15) and section (7) of this rule.

2. A "cost report" is required to be filed annually following the end of a nursing home's fiscal year and is required to detail the cost of rendering covered services for the fiscal reporting period. 13 CSR 70–10.030(3).

3. The New Plan also provided that other amounts were to be added before arriving at the final per diem rate which had an applicable ceiling of $54.95. Those amounts were uniformly added to the base rates of all participating nursing homes and are not relevant to the issues on this appeal.

treating similarly situated providers equally. It ordered the Department to increase Rolla Manor's per diem rate to reflect the inflation that had been allowed to other nursing homes with a fiscal year ending on December 31.[4] This appeal followed.

## DECISION

The Department raises two points on this appeal: (1) the trial court erred in finding that the New Plan violated Rolla Manor's equal protection guarantees because it applied an incorrect legal standard; and (2) even if the New Plan facially created a separate class that was treated differently, equal protection guarantees were not violated because the classification was rationally related to a legitimate governmental interest of controlling costs of the Medicaid program. Because we have concluded that we must reverse on the basis of Point II, Point I will not be discussed.

Distinctions made when a state distributes benefits unequally are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. *Hooper v. Bernalillo County Assessor,* 472 U.S. 612, 618, 105 S.Ct. 2862, 2866, 86 L.Ed.2d 487, 493 (1985). If, however, state action neither creates a classification which burdens a "suspect class" nor impinges on a "fundamental right," it will survive an equal protection challenge if the classification is rationally related to a legitimate state interest (rational basis test). *Adams v. Children's Mercy Hospital,* 832 S.W.2d 898, 903 (Mo. banc 1992); *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503, 512 (Mo. banc 1991).

The trial court found that participation in the Medicaid program was voluntary and did not constitute a fundamental right, and that Rolla Manor was not a member of a suspect class. Neither of the parties suggests that those findings were inappropriate, and they agree that the correct standard for reviewing

the equal protection claim in the instant case is the rational basis test.

Under the "rational basis" test, a classification must be sustained unless it is "patently arbitrary" and bears no rational relationship to a legitimate governmental interest. *Frontiero v. Richardson,* 411 U.S. 677, 683, 93 S.Ct. 1764, 1768, 36 L.Ed.2d 583, 589 (1973). The test was described in *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d at 512, as follows:

> Since the equal protection guarantee is directed against invidious discrimination, that "constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective.... A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

*See also Adams v. Children's Mercy Hospital,* 832 S.W.2d at 903. There is a strong presumption that a statute or regulation conferring money benefits is constitutional. *Mathews v. DeCastro,* 429 U.S. 181, 185, 97 S.Ct. 431, 434, 50 L.Ed.2d 389, 394 (1976). *See also, Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d at 512.

The trial court in the instant case found that the purpose of the New Plan was to compensate for inflation, and that application of the 11.1% adjustment to Rolla Manor's allowable cost, based on its cost report for the fiscal year ending March 31, 1988, was not rationally related to that purpose. It therefore treated the New Plan as lacking a rational relationship to a legitimate state interest. We conclude that the trial court erred in this regard. The Western District has also recently held, in a case involving the same issue, that the New Plan does not violate equal protection rights. *St. Louis South Park v. Missouri DSS,* 857 S.W.2d 304 (Mo.App.1993).

The purpose of the Medicaid program is to provide medical assistance to needy

---

4. The trial court divided the 11.1% by 36 months to arrive at the inflation rate allowed for each month, then multiplied that figure by the number of months between the ending date of Rolla Man-

or's fiscal year and December 31 in order to calculate the inflation it experienced during that intervening period.

persons whose income and resources are insufficient to meet the expenses of health care. *Couch v. Director, State DFS,* 795 S.W.2d 91, 93 (Mo.App.1990); *Mo. State Div. of Family Services v. Barclay,* 705 S.W.2d 518, 521 (Mo.App.1985). Section 208.159[5] provides, in part, that "... the department of social services shall administer payments for nursing home services ..." and "[t]he department shall ... promulgate rules and regulations for the purpose of administering such payments, including rules to define the reasonable costs, manner, extent, quality, charges and fees or payments for nursing home services." Section 208.152 requires that payments be made on the basis of reasonable cost of the care or reasonable charge for the services as defined and determined by the Department.

Prior to 1981, reimbursement was retrospective, which was essentially a cost-pass-through plan devoid of any incentive for cost containment measures. *AGI–Bloomfield Convalescent Center v. Toan,* 679 S.W.2d 294, 298 (Mo.App.1984). Since 1981 the basis for reimbursement has been prospective. As a prospective plan, Medicaid is not intended to compensate for the actual costs of the providers. 42 U.S.C.A. § 1396a(a)(13)(A) provides that nursing homes are to be reimbursed at rates which "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." *See Mo. Dept. of Soc. Serv. v. AGI–Bloomfield,* 682 S.W.2d 166, 169 (Mo. App.1984).

The purpose under Medicaid, therefore, is to provide reasonable reimbursement to participating providers while incorporating cost containment measures. Significantly the New Plan is designed to rebase reimbursement by utilizing "allowable" as opposed to actual costs to arrive at a new rate which contemplates anticipated cost increases.

The state has a legitimate governmental interest in providing Medicaid services to its citizens. Included in that is the necessity of providing reasonable compensation to the providers of those services, as well as methods of calculating the rates at which they are reimbursed. The question in the instant case is whether use of the 1988 cost report (which results in the differential treatment of some providers) as the basis for making those calculations is reasonably related to a legitimate state interest.

The Department could have provided other ways to calculate reimbursement to providers. For instance, it could have given every provider a uniform increase based on the average cost of all nursing homes, without regard to the allowable cost of each individual facility. This approach, however, would have had no relationship to the actual experience of individual nursing homes. The effect could have been to over-reimburse some and under-reimburse others.

The New Plan, by utilizing the most recent desk-reviewed or field-audited cost reports as the basis for calculating the rates of reimbursement, ensured that the allowable costs of each individual provider would be factored into the result.

It is not unreasonable for the state to calculate a base figure for allowable costs from the data provided by the participating facilities in their last reviewed cost report. Using said reports serves to simplify accounting procedures and places the facilities on an equal footing by reviewing a full twelve months of costs for each facility thereby taking into account any seasonal fluctuations in costs and averaging cost by a common denominator of twelve months.

*St. Louis South Park v. Missouri DSS,* 857 S.W.2d at 307. It is reasonable to believe that these considerations would have the effect of encouraging providers of services to continue to participate in the Medicaid program. This, in itself, is a legitimate governmental interest.

We also note that the New Plan was adopted as an emergency regulation. Pursuant to § 536.025, a state agency cannot adopt an emergency rule unless there is a finding

**5.** All references to statutes are to RSMo 1986,    V.A.M.S.

that "an immediate danger to the public health, safety or welfare requires emergency action." The "Emergency Statement" accompanying the publication of the New Plan stated:

> The Long–Term Care program is of critical importance to the health and well being of the recipients being served and represents a major impact on the economy of the state in the long-term care services. The Division of Medical Services believes the immediate implementation of the Emergency Rule is necessary to avoid jeopardizing funding available for all Medicaid recipients. Therefore, the division believes this Emergency Rule to be fair to all interested persons and parties under the circumstances.

The 1988 cost reports from which the "allowable costs" were calculated under the New Plan were the most recent, most reliable, and only available information reflecting these costs of each individual provider as of the time the plan took effect. Given the emergency status of the New Plan, the Department was justified in using the 1988 cost reports for this purpose.[6]

It is true, as found by the trial court in the instant case, that similarly situated providers were not all treated equally, because utilization of the 11.1% factor reimbursed those providers with fiscal years ending on December 31, 1988 on the basis of all inflation experienced during the calendar year, but did not do the same for those with fiscal years ending earlier. Rolla Manor argues that this disparity is unconstitutionally discriminatory unless its benefits are recalculated to give it the benefit of the excluded inflation.

The fact that it is mathematically possible to calculate the per diem rate for Rolla Man-

or so as to add an inflationary factor for the period between its fiscal year end and December 31, as the trial court did, does not establish that the New Plan is constitutionally impaired. The existence of other methods of calculation which would alleviate some or all of the inequalities complained of is not controlling.

> This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classifications is neither possible nor necessary.... As long as the classificatory scheme chosen by Congress rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.

*Schweiker v. Wilson*, 450 U.S. 221, 234–235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186, 198 (1981).

The United States Supreme Court also stated in *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491, 501–502 (1970):

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." ... "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." ...

---

6. Some cases have indicated that administrative convenience may be sufficient for equal protection purposes if it rises to a certain level or is combined with other factors. *See Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 152, 100 S.Ct. 1540, 1546, 64 L.Ed.2d 107, 116 (1980); *Hampton v. Mow Sun Wong*, 426 U.S. 88, 116–117, n. 48, 96 S.Ct. 1895, 1911, n. 48, 48 L.Ed.2d 495, 516, n. 48 (1976). The Missouri Supreme Court has recently stated that "administrative

convenience ... does suffice for equal protection purposes" in a case involving a constitutional challenge to a revenue statute. *Associated Industries of Mo. v. Director of Revenue*, 857 S.W.2d 182, 193, n. 10 (Mo. banc 1993). The result we reach in this case is based on our conclusion that the classification complained of bears a rational relationship to a legitimate governmental interest aside from any administrative convenience which might exist.

The state has a legitimate interest in providing a new rate of reimbursement to Medicaid providers which is related to the allowable, as opposed to actual, costs of individual plan participants. The use of the 1988 cost reports which contained the most recent and most reliable information was rationally related to this purpose. Even though the New Plan resulted in some unequal treatment, it does not result in a violation of the constitutional guarantee of equal protection of the law.

The judgment is reversed and remanded with instructions to reinstate the decision of the AHC to the extent it affirmed the Department's rebased rate for Rolla Manor.

MONTGOMERY, P.J., and FLANIGAN, J., concur.