**WILLOW HEALTH CARE, INC., Willow Care Nursing Center, Respondent,**

v.

**STATE of Missouri, DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant.**

No. WD 47805.

Missouri Court of Appeals, Western District.

Jan. 11, 1994.

Richard Beaver, Div. of Legal Services, Jefferson City, for appellant.

Mark G. Arnold, Husch & Eppenberg, St. Louis, and Harvey M. Tettlebaum, Barbara Miltenberger, Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

LOWENSTEIN, Judge.

This case involves the setting of per diem reimbursement rates for long-term nursing facilities which participate in the Missouri Title XIX Medicaid Program. The facts, the core issue, and the procedural history in this case are similar to those in the two companion cases also handed down this day, as well as to *St. Louis South Park v. Missouri Dep't of Social Services, Div. of Medical Services,* 857 S.W.2d 304 (Mo.App.1993) Petition for Cert. filed Nov. 15, 1993 and *Rolla Manor, Inc., v. Missouri Dep't of Social Services, Division of Medical Services,* 865 S.W.2d 812 (Mo.App.1993). Because the applicable facts are concisely set out in *South Park,* 857 S.W.2d at 305–06, they need not be fully repeated here.

Effective July 1, 1990, the appellant, the Department of Social Services (Department), adopted a "New Plan" for calculating rates to be paid to homes such as the respondent, Willow Health Care, Inc. (Willow) under Medicaid. The New Plan allowed three alternative methods to calculate a rate increase over the "Old Plan." The crux of Willow's reason for filing this suit before the Administrative Hearing Commission (Commission) was because the New Plan allowed an increase of approximately $6.31 per patient, which brought its rebased rate to $52.54, which was $1.42 short of the amount Willow felt it was entitled. The reason for the difference was because the New Plan implementation did not allow credit for several months of inflation to homes like Willow, which kept books on a fiscal year basis,

rather than on a calendar year period. The formula adopted by the Appellant was geared to the allowance of inflation based on the calendar year of 1988, ending December 31. In 1988 there were 376 homes participating and 208 of them, or 55%, had fiscal years ending the same time as the calendar year. Willow's fiscal year ended on June 30 and, in a nutshell, under the New Plan implementation, Willow did not get credit for inflation between its end date and December 31.

■ Willow's complaint before the Commission, and the sole issue on appeal, involves an equal protection claim of "... the constitutional validity of the New Plan's decision to compute the base rate in a fashion that gives a full year's worth of inflation to nursing homes with year end fiscal years, but less than a full year's worth of inflation to all other similarly situated nursing homes." The Commission did compute what the re-based rate would be if the full amount of time were allowed but felt it did not have the authority to reach the equal protection issue and, as in *South Park* and *Rolla Manor*, the circuit court held the Department's failure to allow an inflation factor for months after Willow's fiscal year-end and prior to December 31, amounted to an equal protection violation by not treating similarly situated providers equally. *South Park*, 857 S.W.2d at 306; *Rolla Manor*, 865 S.W.2d at 813.

■ In *South Park*, where the home's accounting year ended in April, even earlier and allowing less time for an inflationary factor than Willow's June year-end period, this court recognized the State's use of December 31, 1988 in computing the inflation factor would, and did, "... allow for variables between nursing homes, variables are unavoidable and the state's method of determining rates is not unjustly or irritatingly discriminating." *South Park*, 857 S.W.2d at 307. This court repeated language from *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503, 512 (Mo. banc 1991) to the effect that government action which does not create a suspect classification or impinge on a fundamental right will stand up to equal protection scrutiny if the classification bears a rational relationship to a legitimate government interest. *South Park* noted the equal

protection guarantee is against "invidious" discrimination, meaning "unjustly and irritatingly discriminating," *South Park*, 857 S.W.2d at 306 (quoting from *Bray v. Alexandria Women's Health Clinic*, — U.S. —, 113 S.Ct. 753, 122 L.Ed.2d 34 (1993)). *South Park* continued, "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classification is imperfect." *Id.* at 307 (with citations omitted). If the classification has some reasonable basis, it does not offend the constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality. *Id.* (citing *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). The Medicaid program does not purport to reimburse for actual costs. Rather, reimbursement is for allowable costs as determined by, and in accordance with the state regulations.

*South Park* continued by stating the fact that different facilities have different fiscal years and did not render the cost period utilized in 1988 unreasonable and, although the respondent's formula resulted in variables "between nursing homes, variables are unavoidable and the state's method ...," did not arise to the level of unjust or irritatingly discrimination. *Id.* The court held, "... any inflationary variable is outweighed by the state's interest in controlling costs." *Id.* Furthermore, "any inequality that the Department's method of rebasing rates might allow is not unreasonable when measured against the state's interest in the efficient distribution of limited public funds. The Department's use of fiscal year-end 1988 cost reports was a reasonable, effective, and efficient method of treating the participating nursing homes in a similar fashion when balanced against the difficulty and additional accounting that would be required by an effort toward a more precise calculation which sought to consider actual inflation experienced by a given nursing home." *Id.* at 308.

The outcome of the appeal in *South Park* was to reinstate the Department's rebased rate as found by the Commission because this court found no equal protection violation perpetrated on the nursing home because of the Department's use of a 1988 calendar year

basis for determining a rebased rate. Though there were differences based on the method used, the court found the results were not unreasonable and there was no invidious discrimination.

The Southern District in *Rolla Manor* reached the same result as this court in *South Park*, on slightly different reasoning. In *Rolla Manor*, all the facts are similar to *South Park* and the case at bar. The nursing home there had a fiscal year end of March 31. *Rolla Manor* acknowledged reimbursement under the New Plan "resulted in some unequal treatment," *Rolla Manor*, 865 S.W.2d at 817, and that "it is mathematically possible to calculate the per diem rate . . . so as to add an inflationary factor," *Id.* at 816, but held the classification bore a rational relationship to a governmental interest and was not, therefore, constitutionally impaired. The Court said there is a legitimate state interest in reimbursing providers under federal law and state common law of "allowable," as opposed to "actual" costs of individual participants. *Id.* at 815, 817.

This court renews its adherence to the rationale and result in *South Park*. The judgment is reversed and remanded with instructions to reinstate the Commission's decision to the extent it affirmed the Department's rebased rate.

All concur.