**GREENE COUNTY NURSING AND CARE CENTER, INC. d/b/a Greene Haven, Plaintiff/Respondent/Cross–Appellant,**

v.

**DEPARTMENT OF SOCIAL SERVICES and Division of Medical Services, Defendants/Appellants/Cross–Respondents.**

Nos. 18874 and, 18883.

Missouri Court of Appeals, Southern District, Division Two.

June 30, 1994.

Mark G. Arnold, Husch & Eppenberger, St. Louis, Harvey M. Tettlebaum, Barbara Miltenberger, Jefferson City, for plaintiff/respondent/cross-appellant.

Richard Beaver, Jefferson City, for defendants/appellants/cross-respondents.

CROW, Judge.

This is another case in the ever-lengthening list challenging the constitutionality of a regulation establishing a new method of calculating per diem rates paid to nursing homes participating in the Missouri Medicaid program. The regulation, 13 CSR 70–10.010, referred to in this and other cases as "the New Plan," took effect July 1, 1990.

Greene County Nursing and Care Center, Inc., is a Missouri not-for-profit corporation licensed to operate a skilled nursing care and intermediate care nursing facility. It does so under the name "Greene Haven." Greene Haven is certified to participate in the Title XIX Medicaid program. It provides care to Medicaid recipients.

The Division of Medical Services ("DMS"), an agency within the Department of Social Services, promulgated the New Plan. § 208.159, RSMo 1986; §§ 208.153 and 208.-201, RSMo Cum.Supp.1989.

A DMS official notified Greene Haven that its "Medicaid prospective per-diem rate" had been calculated as $49.56 under the New Plan, effective July 1, 1990.

Greene Haven filed a complaint with the Administrative Hearing Commission ("AHC") alleging, among other things, that the New Plan denied Greene Haven equal protection of the law by reason of the method in the New Plan for determining Greene Haven's "allowable cost."

As explained in *Rolla Manor, Inc. v. Missouri Department of Social Services, Division of Medical Services,* 865 S.W.2d 812, 813 (Mo.App.S.D.1993), and *St. Louis South Park, Inc. v. Missouri Department of Social Services, Division of Medical Services,* 857 S.W.2d 304, 305 (Mo.App.W.D.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 880, 127 L.Ed.2d 76 (1994), the New Plan provided that the allowable cost of a facility such as Greene Haven was to be determined from such facility's cost report covering a 12–month period ending in calendar year 1988. Greene Haven's fiscal year ends March 31. Consequently, the cost report upon which DMS determined Greene Haven's allowable cost covered a 12–month period ending March 31, 1988.

To determine a facility's per diem rate under the New Plan, the facility's allowable cost was multiplied by 111.1 percent (in effect granting an 11.1 percent increase). *Rolla Manor,* 865 S.W.2d at 813; *St. Louis South Park,* 857 S.W.2d at 306. Certain other amounts were then added for factors such as an increase in the minimum wage, a laundry allowance, and other expenses. The result of that arithmetic was the facility's new per diem rate, subject to certain limitations immaterial here.

According to Greene Haven, in 1988 there were 376 nursing homes in its class. The majority of them had fiscal years ending December 31. Consequently, the allowable cost of those facilities was determined from cost reports covering a 12–month period ending December 31, 1988, whereas Greene Haven's allowable cost was determined from a cost report covering a 12–month period ending March 31, 1988.

Greene Haven argued to the AHC that there was inflation between March 31, 1988, and December 31, 1988, hence it "lost nine months worth of inflation in its costs." Consequently, insisted Greene Haven, the New Plan denied it equal protection in that nursing homes with fiscal years ending December 31, 1988, were allowed to have the inflation from March 31, 1988, to December 31, 1988, factored into their allowable cost, but Greene Haven was not.

The AHC found nursing home providers experienced increased costs due to inflation between April 1, 1988, and December 31, 1988. The AHC further found:

"11. Because Greene Haven's FY88 cost report did not include any costs later than March 31, 1988, Greene Haven's 1988 allowable costs, and thus its 1988 base rate and New Plan rate, did not include the inflation which occurred between April 1, 1988, and December 31, 1988. Greene Haven's allowable costs, and thus its 1988 base rate and New Plan rate, would necessarily reflect nine months less inflation than other similarly situated providers whose fiscal years ended December 31....

12. An increase of $1.19 ppd to Greene Haven's rate would properly account for the inflation, not reflected in its 1988 allowable costs, that occurred between the end of Greene Haven's fiscal year in 1988 (March 31) and the end of the calendar year. This amount was calculated by computing the average monthly component of the New Plan's 36 month inflation factor (11.1 percent/36 months = 0.3083 percent per month), multiplying that amount by nine for the nine month period in 1988 for which Greene Haven's cost report excludes inflation (0.3083 percent per month × 9 months = 2.7747 percent), and multiplying that product by Greene Haven's FY88 allowable costs per patient day (2.7747 percent × $42.79 ppd = $1.19 ppd)."

The AHC noted Greene Haven did not assign any error in the way DMS computed

Greene Haven's per diem rate under the New Plan. Instead, Greene Haven based its complaint on the premise that the New Plan was unconstitutional.

The AHC held it lacked authority to declare the New Plan unconstitutional. Therefore, even though the AHC found as a fact that an increase in Greene Haven's rate of $1.19 per patient day would account for the inflation between April 1, 1988, and December 31, 1988, the AHC did not award the increase. The AHC held Greene Haven's rate would be as determined by DMS: $49.56 per patient day.

Greene Haven thereafter commenced the instant action by filing in the Circuit Court of Greene County a timely petition for judicial review of the AHC decision per §§ 536.100–.140, RSMo 1986. Greene Haven alleged the New Plan, as applied to it, violated Greene Haven's right to equal protection under the law, guaranteed by Amendment XIV to the Constitution of the United States and by Article I, § 2 of the Constitution of Missouri (1945).

The circuit court held the New Plan violated the constitutional provisions cited by Greene Haven. The circuit court entered judgment setting aside the per diem rate set by DMS for Greene Haven and remanding the case to DMS for determination of Greene Haven's rate "by a method which adheres to" the constitutional requirement of equal protection. In assigning that task to DMS, the circuit court found such determination "is peculiarly well suited to the informality of administrative procedure and is poorly suited to judicial determination."

DMS and the Department of Social Services bring appeal 18874 from that judgment. We henceforth refer to them as "Defendants," their designation in the circuit court.

Defendants' brief presents two points relied on:

"I.

The [circuit court] decision applies totally incorrect law in its equal protection analysis, and even if DMS did facially create a separate class or subclass that is treated somewhat differently, the decision

still erred by holding that DMS violated Greene [Haven's] right to equal protection guaranteed by the Missouri and U.S. Constitution when setting Greene [Haven's] Medicaid per diem rate under 13 C.S.R. § 70–10.010 for that facial classification is rationally related to such reasonings as the legitimate governmental interest of controlling the necessary costs of the Title XIX Medicaid program while reimbursing adequately those facilities that are economical and efficient.

## II.

The circuit court decision is not supported by competent substantial evidence when it held that '[t]he evidence shows there were actual increases in costs of care, owing to inflation, throughout all months of 1988' and, '[n]o reasonable justification for such discrimination is advanced by the Defendants'."

Defendants ask us to reverse the circuit court judgment. Inasmuch as they did not seek judicial review of the AHC decision, we assume they want it left intact.

Greene Haven brings appeal 18883 from the circuit court judgment. The sole point relied on in Greene Haven's brief reads:

"The circuit court erred in remanding the case to recalculate Greene Haven's rate, because the circuit court was bound by the AHC's findings of fact on the proper remedy, in that competent and substantial evidence supports those factual findings."

Greene Haven prays that we:

"... reverse that portion of the judgment of the circuit court that remanded the cause to the AHC for further proceedings. The court should affirm the judgment in all other respects, and award Greene Haven the $1.19 increase in its daily rate that the AHC found would cure the constitutional violation."

Beginning with *St. Louis South Park*, 857 S.W.2d 304, and continuing with *Rolla Manor*, 865 S.W.2d 812; *Dade County Nursing Home District v. Missouri Department of Social Services, Division of Medical Servic-*

*es,* 865 S.W.2d 817 (Mo.App.S.D.1993), *Citizens Memorial Health Care Foundation v. Missouri Department of Social Services, Division of Medical Services,* 865 S.W.2d 818 (Mo.App.S.D.1993), *Willow Health Care, Inc. v. Department of Social Services, Division of Medical Services,* 868 S.W.2d 229 (Mo.App. W.D.1994), *Jefferson City Manor, Inc. v. Missouri Department of Social Services, Division of Medical Services,* 868 S.W.2d 231 (Mo.App.W.D.1994), and *Kirksville Manor, Inc. v. Missouri Department of Social Services, Division of Medical Services,* 868 S.W.2d 231 (Mo.App.W.D.1994), Missouri appellate courts have uniformly rejected constitutional challenges to the New Plan identical to the challenge asserted by Greene Haven before the AHC and in the circuit court. We can add nothing to what is said in those cases. We do, however, observe that one of them, *Rolla Manor,* is a duplicate of the instant case in that the fiscal year of the nursing home there ended March 31, the same date as Greene Haven's. 865 S.W.2d at 813.

The circuit court here did not have the benefit of any of those cases, as the circuit court entered its judgment March 5, 1993, before any of them were decided.

Applying those seven cases, we hold Defendants' first point is meritorious and compels reversal of the circuit court's judgment. That makes it unnecessary to consider Defendants' second point.

Greene Haven's point relied on hinges on the circuit court's holding that inasmuch as the New Plan denies Greene Haven equal protection, the New Plan is invalid. On that premise, Greene Haven maintains the circuit court should have awarded it the additional $1.19 per patient day which the AHC decided was the proper amount to allow Greene Haven for the increase in its costs between April 1, 1988, and December 31, 1988.

Because we have held the New Plan is not vulnerable to Greene Haven's constitutional attack, it follows that the amount fixed by DMS as Greene Haven's per diem rate under the New Plan ($49.56) must remain undisturbed. As we have seen, the AHC decision left it so.

Greene Haven's point relied on is denied. The judgment of the circuit court is reversed and the cause is remanded to that court with directions to enter judgment affirming the decision of the AHC holding that Greene Haven's rate shall be $49.56 per patient day effective July 1, 1990.

PREWITT and GARRISON, JJ., concur.