Michelle WRIGHT, Appellant,

v.

MISSOURI DEPARTMENT OF SO-
CIAL SERVICES, DIVISION OF
FAMILY SERVICES, Respondent.

No. WD 56897.

Missouri Court of Appeals,
Western District.

March 28, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 2, 2000.

526

Kendall R. Vickers, Nevada, , for appellant.

Carolyn Hajaved Kerr, Jefferson City, for respondent.

Before JAMES M. SMART, Jr., Presiding Judge, JOSEPH M. ELLIS, Judge and EDWIN H. SMITH, Judge.

JOSEPH M. ELLIS, Judge.

In 1998, Michelle Wright was 27 years old and employed as a nail technician. She had been married in 1989 and divorced in 1996. On March 15, 1998, Wright gave up her own residence to live with friends during the week and her parents on the weekends. On April 2, 1998, Wright was involved in an automobile accident, in which she sustained a fractured cervical vertebra. She was hospitalized for one week, at which time she was discharged on restricted activity. After April 9, 1998, Wright had no income and was provided food, shelter and basic necessities by her mother and stepfather.

Wright applied to the Missouri Department of Social Services for medical assistance and general relief benefits on May 13, 1998. Both applications were denied and Wright requested a hearing on July 13, 1998. The Division of Family Services (Division) denied Wright's applications on September 4, 1998, and Wright appealed only the general relief benefits application to the Circuit Court of Vernon County. The case was heard on August 12, 1998. At the hearing, the Division produced evidence that the gross income of Wright's mother and stepfather was $57,602 per year, or $4,800.16 per month. A budget compiled by Division caseworker Kathy Sheridan found that since the poverty level for a family of two is $905 per month, the excess income of $3,895.16 was imputed to Wright as a member of their household. The Consolidated Standard for general relief assistance for one person was at that time $181. Mo.CODE REGS. tit. 13, § 40–2.120(3)(A)(2). Therefore, the trial court found that since at the time she applied for benefits, Wright was living in the home of her mother and her mother's husband, who are specified relatives within the meaning of § 208.015.5 and Mo.CODE REGS. tit. 13, § 40–2.070(1), and who were provid-ing her with food, shelter and other necessities of life, she was a member of their household and ineligible for general relief benefits. This appeal followed.

 On appeal of the circuit court's review of an administrative decision, we review the decision of the administrative agency, not that of the circuit court. *Americare Systems, Inc. v. Missouri Dept. of Social Servs.*, 808 S.W.2d 417, 419 (Mo. App. W.D.1991). We will reverse the decision of the agency only where no substantial and competent evidence exists to support it, the agency abused its discretion, or it acted arbitrarily, capriciously or unreasonably. *Id.*

Wright brings two points of error on appeal. In her first point, she argues that the Division erroneously denied her benefits in violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution, and Article 1, Section 2 of the Missouri Constitution. The statute governing eligibility for general relief benefits states, in pertinent part:

The division of family services shall grant general relief benefits to those persons determined to be eligible under this chapter and the applicable rules of the division. The director may adopt such additional requirements for eligibility for general relief, not inconsistent with this chapter, which he deems appropriate.

\* \* \*

5. [B]enefits shall not be provided to any member of a household...if certain specified relatives living in the household of the claimant are employed and have income sufficient to support themselves and their legal dependents and to meet the needs of the claimant as defined by rule of the division. **"Specified relatives"** shall be defined as the spouse, mother, father, sister, brother, son, daughter, and grandparents of the claimant, as well as the spouses of these relatives, if living in the home.

§ 208.015.1. & .5. Wright argues that, to the extent the rule is interpreted as disqualifying an otherwise eligible claimant from receiving benefits because of the ability of a relative to provide support when the relative has no legally enforceable obligation to provide that support, it is a denial of equal protection under the U.S. and Missouri Constitutions.

As a preliminary matter, we must decide whether we have jurisdiction to consider the constitutional challenge. By virtue of Article V, § 3 of the Missouri Constitution, the court of appeals does not have jurisdiction of a case involving the constitutional validity of a statute. *Schumann v. Missouri Highway and Transp. Com'n.*, 912 S.W.2d 548, 551 (Mo.App. W.D.1995). "However, the mere assertion that a statute is unconstitutional does not deprive the court of appeals of jurisdiction. The constitutional issue must be real and substantial; not merely colorable." *Id.* To determine whether a constitutional claim is real and substantial, we make a preliminary inquiry to ascertain whether the contention discloses a contested matter of right, which involves some fair doubt and reasonable room for disagreement. *Kansas City Star Co. v. Shields*, 771 S.W.2d 101, 103 (Mo.App. W.D.1989) (*quoting State v. Egan*, 272 S.W.2d 719, 725 (Mo. App. S.D.1954)). "[I]f such preliminary inquiry discloses the contention is so obviously unsubstantial and insufficient, either in fact or law, as to be plainly without merit and a mere pretense, the claim may be deemed merely colorable." *Id.* We conclude, for the reasons hereinafter set forth, that Wright's claim is only colorable and that we have jurisdiction to decide the case.

The first step in considering a claim that a law violates the Equal Protection Clause is a determination whether the statutory scheme impinges upon a fundamental right explicitly or implicitly protected by the Constitution, or operates to the detriment of some suspect class. *Missourians for Tax Justice Educ. Project v. Holden*, 959 S.W.2d 100, 103 (Mo. banc 1997). If it does not, the only question is whether the classification is rationally related to a legitimate state interest.

Wright makes no claim that the statute impinges upon a fundamental right protected by the Constitution. Rather, her challenge is based on the notion that the statute operates to disadvantage a suspect class.

A suspect classification exists where a group of persons is legally categorized and the resulting class is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." Classifications based on wealth/poverty do not fit this description. (Citations omitted).

*Id.* (*quoting San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 28, 93 S.Ct. 1278, 1293–94, 36 L.Ed.2d 16 (1973)). From this, it is readily apparent that Wright is not a member of a suspect class. Accordingly, the only question is whether the classification contained in the statute is rationally related to a legitimate state interest.

Wright relies on *Ranschburg v. Toan*, 540 F.Supp. 745 (W.D.Mo.1982), where the court found that a classification to qualify for Utilicare benefits, between persons receiving Supplemental Security Income and Social Security, as opposed to disability Medical Assistance, did not rationally further any state interest and was therefore unconstitutional. We do not perceive the statute at issue in *Ranschburg* to be comparable to § 208.015. Moreover, while we consider United States District Court opinions for such aid and guidance as they provide, such decisions are not binding on Missouri courts. *Judy v. Arkansas Log Homes*, 923 S.W.2d 409, 416 (Mo.App. W.D.1996); *Hanch v. K.F.C. Nat. Management Corp.*, 615 S.W.2d 28, 33 (Mo. banc 1981).

■ Section 208.015, and the rules and regulations promulgated pursuant thereto, disqualify applicants living in the same household with specified relatives who have sufficient income to support themselves, their legal dependents and to meet the needs of the applicant. The regulations adopt the poverty level guidelines as the determinant of sufficient income. As noted previously, on social welfare issues, equal protection analysis requires the state to show that the challenged classification is rationally related to a legitimate government interest. *Willow Health Care, Inc. v. State Dept. of Social Serv.*, 868 S.W.2d 229, 230 (Mo.App. W.D.1994). If the classification has a reasonable basis, it does not offend the Constitution even though it results in some inequality. *Id.* Here, the statute excludes those applicants who have close family members living in the same household who are capable of providing financial support for the applicant. While it is true that Wright's mother and stepfather have no legal obligation to support her, Wright nonetheless testified at the hearing that her mother and stepfather provided her with food, shelter, and the basic necessities of life. The state has a legitimate interest in restricting welfare benefits to those who are most in need, as benefits are limited and the state must distribute funding efficiently. Indeed, the Legislature has directed that in the management and distribution of the state's limited public assistance budget, the Division must consider all facts and circumstances surrounding an applicant, including living conditions, income and resources, from whatever source received. *§ 208.010.1.* The statutory and regulatory guidelines adopted by the state are rationally related to the legitimate state interest of maximizing limited public assistance resources to those most in need. Point I is denied.

■ In her second point, Wright contends that the mere fact that she was residing in her mother's and stepfather's home at the time of the accident and afterward did not make her a member of their "household." She argues that as an emancipated adult, the Division erroneously determined her to be member of her parents' household, the exclusionary language of the statute is inapplicable, and her parents' income should not have been imputed to her.

Wright relies on *Emily v. Missouri State Div. of Family Serv.*, 570 S.W.2d 783 (Mo.App. W.D.1978) to assert her claim that the mere fact that she was occupying her mother and stepfather's residence at the time of the accident does not make her a member of their household. In *Emily,* the claimant sublet an apartment from her sister for one month while the sister was out of town. *Id.* at 785. The claimant paid rent to her sister, and the sister did not occupy the apartment at the same time as the claimant. *Id.* In that case, the Division found that the sister (a specified relative) was "living in" the apartment at the same time as the claimant, therefore rendering the claimant ineligible for general relief benefits. *Id.* This court reversed, stating that, upon consideration of all facts and circumstances of the claimant's living arrangement,[1] the claimant's sister was not an income resource for the claimant, the sister's mere maintenance of the apartment was not a "presence" sufficient to create a "household," nor was the relationship permanent, but rather the transitory use of living quarters. *Id.* at 786–87. The court went on to define "household" as:

> a domestic unit—a collection of parents and children or of an even broader body of persons who live together under the same roof, subsist together and direct their attention to a common object and are under one head. And in the particular context of § 208.010.1 which determines eligibility for public welfare by

---

**1.** The applicable statutory standard under § 208.010.1 (1976) was "consideration of all facts and circumstances surrounding the claimant, including his living conditions, earning capacity, income and resources, from whatever source. received ... in accordance with standards developed by the Division...." *§ 208.010.1* (1976).

**530**

the resources available to a claimant to live in decency and health, *household* imports a condition of reciprocal dependency and support. In short, a household is a family and the regulation term *household* reflects the statutory policy that, where a claimant is part of a domestic unit, welfare benefits issue as *family* services.

*Emily,* 570 S.W.2d at 786 (citations omitted). In that case, an absentee sibling did not meet these criteria. *Id.* at 786–87.

■ The term "living in the same household" is a common, well-understood concept and does not need to be defined. *State Farm Mut. Auto. Ins. Co. v. DeCaigney,* 927 S.W.2d 907, 910 (Mo.App. W.D. 1996). The facts of *Emily* are distinguishable from the case at bar. Wright was living in her mother's and stepfather's home at the time she applied for benefits, both were present in the home, and she testified that she was dependent upon them for food, shelter and necessities. They subsisted together as a unit, and she was, therefore, a member of their household.

■ Furthermore, Wright's legal status as an emancipated adult is irrelevant to the inquiry of whether sufficient resources were available to her to render her ineligible for benefits.

> In determining eligibility and the amount of benefits to be granted under federally aided programs, the income and resources of a relative or other person living in the home shall be taken into account to the extent the income, resources, support and maintenance are allowed by federal law or regulation to be considered.

*§ 208.010.3.* Since the household income was more than sufficient to support Wright, and there was no evidence that she was prevented from availing herself of that resource, she was ineligible under the statute. Were we to reach any other result, the effect of our decision would be to discourage capable family members from

providing support and care for family members in times of need, which is clearly contrary to the intent of the statute. Point II is denied.

The judgment of the trial court affirming the decision of the Division is affirmed.

All concur.